651 So.2d 154 (1995)
Cecil Anthony DORTCH, Appellant,
v.
STATE of Florida, Appellee.
No. 93-310.
District Court of Appeal of Florida, First District.
February 16, 1995.
*155 Nancy A. Daniels, Public Defender and Carl S. McGinnes, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Marilyn McFadden, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Appellant, Cecil Anthony Dortch, was convicted of possession of cocaine and sentenced to a term of ten years imprisonment as an habitual felony offender. Appellant raises four issues on appeal, of which we find it necessary to address only appellant's challenge to the adequacy of the trial court's Faretta[1] inquiry. Because of our determination of this issue we reverse and remand for a new trial.
In determining whether to permit appellant to represent himself at trial, the trial court engaged appellant in the following discourse.
COURT: Now, do you want Mr. Childers here to serve as your attorney?
DEFENDANT: I would like to ask the Court for Mr. Childers' assistance in assisting me in selecting the jury. From that point on, Your Honor, I would like to represent myself. I would like to do all my cross-examination to each witness that this gentleman may call to the stand, and I think I'm capable of doing my own closing arguments. All I want him to do is help me select a jury.
COURT: You want him to be present and assist you at counsel table and serve ...
DEFENDANT: He can sit at the table, but I'm going to run the show when the show starts.
COURT: No, I'm going to run the show 
DEFENDANT: Okay.
COURT:  under my own rules.
DEFENDANT: Okay, You the Judge.
COURT: All right, sir. You've been in court a lot of times, have you not?
DEFENDANT: Yes, sir.
COURT: And you've had trials before and I presided over some of the trials you've been involved in?
DEFENDANT: Yes, sir.
COURT: And you think that you've been in court enough and are familiar enough with the rules of trial procedure and evidence that you can represent yourself in the course of a trial without having counsel represent you and conducting a trial on your behalf.
DEFENDANT: Just as I did in the federal court, Your Honor. I was represented by Mr. Paul Miller, which is an ex-prosecutor. And at the end of our suppression hearing, I decided I didn't want him to represent me due to the way he conducted his self in the hearing. So Lacey Collier ordered him to not just withdraw from my case, but to assist me in picking the jury and sit at the desk with me if I needed to ask him anything or if he wanted to implicate something to me, he could. But as far as getting up and saying anything, he was not allowed to do that. I did all of it against Mr. Preisser. He was the prosecutor down there... . He's supposed to be ranked the sixth or seventh in the nation for the prosecuting cases. So I think I'm familiar with, yeah, the rules  and
COURT: How did that case come out?

*156 DEFENDANT: By unanimous decision I was found not guilty, Your Honor, and the charge was possession of firearm.
COURT: So you knocked off the No. 6 heavyweight contender by a unanimous decision, is that what you're saying?
DEFENDANT: I'm saying all twelve people said I was not guilty. It was a twelveman jury panel.
COURT: Twelve-man jury. Okay.
DEFENDANT: All twelve of them said I was not guilty.
COURT: So you think with that one under your belt, you are ready to take on another one?
DEFENDANT: Well, I feel like what this gentleman has under his belt as far as being down in this courthouse, that I stand a better chance representing myself than he would be representing me. He don't know my case.
COURT: Now, the last time you were in court, you wanted to fire Mr. Peter Mitchell and I wouldn't let you. Do you remember? Mr. Mitchell went ahead and represented you and got you acquitted on that charge, didn't he?
DEFENDANT: Yes, sir. I was not guilty just as I'm not guilty in this case, Your Honor.
COURT: You think you want to go ahead and proceed to represent yourself after jury selection, and to have Mr. Childers here just as your standby counsel, is that right?
DEFENDANT: Correct.
COURT: All right. Well, the Court having conducted this colloquy feels like it should honor that request, and I'm going to let Mr. Childers stay on as standby counsel and assist you during the course of the trial, principally during jury selection.
DEFENDANT: I appreciate it.
COURT: And then we'll see how it goes from there. All right?
DEFENDANT: Okay.
At a subsequent hearing held prior to trial, the following colloquy took place:
COURT: I'm getting ready to start this trial, Mr. Dortch. We picked the jury Monday. At this point I need to reinterrogate you again to make sure that you want to stick to your previous decision and at this point proceed to represent yourself. Is that correct?
DEFENDANT: Yes, sir.
COURT: Now, let me get on the record. How old are you now?
DEFENDANT: Thirty-three.
COURT: Thirty-three. You completed high school?
DEFENDANT: No, sir.
COURT: How far did you go in high school?
DEFENDANT: To the twelfth grade.
COURT: To the twelfth grade. Since high school, have you gotten a GED or gone back to school at all?
DEFENDANT: I've been back to school, but haven't obtained the GED.
COURT: Where did you go back to school, PJC?
DEFENDANT: PJC, in prison when you sent me.
COURT: You've had some courses since high school?
DEFENDANT: Yes, sir.
COURT: All right. You feel like you're intelligent enough and able to communicate sufficiently to represent yourself?
DEFENDANT: Yes, sir.
COURT: All right. And you've had a number of court proceedings, either trials or other appearances in court, that you feel comfortable in court in representing yourself?
DEFENDANT: I wouldn't say I had a number of proceedings, but I feel comfortable in representing myself, yes, sir.
COURT: Well, you've had at least what, three trials where you've been involved in jury trials?
DEFENDANT: Yes, sir.
COURT: And the last one you mentioned to me was one in federal court that you represented yourself successfully, is that right?
DEFENDANT: Yes, sir.

*157 COURT: You feel that based on that combination of experience that you know enough about court proceedings and have enough faith in your own ability that you want to represent yourself, is that right?
DEFENDANT: I feel I have enough common sense to represent myself. Faith in the Lord.
COURT: All right.
DEFENDANT: And God.
COURT: Now, you've also requested that Mr. Childers, your court-appointed attorney, be kept here on a standby basis in the need if you had to seek some technical advice you could ask him to assist you, is that right?
DEFENDANT: Yes, sir.
COURT: All right. You understand also that at any point during the trial now if you feel like you need for him to assist you and become your attorney and resume the trial of the case, that you can make that request of him?
DEFENDANT: (Nods head affirmatively).
COURT: You understand you have that right?
DEFENDANT: Yes, sir.
COURT: All right. And you feel that this decision to proceed to represent yourself at this time is your own free decision.
DEFENDANT: It is, sir.
COURT: All right. As a matter of fact, you've also insisted on it, have you not?
DEFENDANT: Yes, sir, due to I trust in myself, but I'm not trusting him.
Appellant then signed a waiver of counsel form and the trial judge pronounced:
The record will reflect the Court upon further inquiry is satisfied that Mr. Dortch has made a knowing and intelligent waiver to right of counsel. The Court is satisfied that this is his own free decision. The Court is further satisfied that he has other requisite minimum qualifications as far as age, intellect, experience and ability to represent himself. So the Court is going to reaffirm its decision to let him proceed pro se at this time and represent himself without (sic) further understanding that he will have the standby counsel and assistance of Mr. Childers if needed.
While we are not entirely unsympathetic with the views expressed by Judge Barfield in dissent, this record discloses that the trial court failed to adequately apprise appellant of the dangers and disadvantages of self-representation. Specifically, the trial court failed to advise appellant of the seriousness of the charges against him, the potential sentence he might face if found guilty, or the consequences of habitualization. We are obliged to find under our prior decisions in Payne v. State, 642 So.2d 111 (Fla. 1st DCA 1994), and Taylor v. State, 610 So.2d 576 (Fla. 1st DCA 1992), that such a specific inquiry was required. Accordingly, we reverse and remand for a new trial.
REVERSED and REMANDED for a new trial.
MINER and MICKLE, JJ., concur.
BARFIELD, J., dissents with opinion.
BARFIELD, Judge, dissents.
Cecil Anthony Dortch engaged the trial judge in a dialogue chronicling the history of their relationship since childhood, the judge's prior sentences imposed upon him, and his concern for fair treatment from the judge since, in his words, "... I'm a career criminal ... I'm facing ... I be getting threatened with 30 years." It appears that the actual sentence possible as an habitual felon would be a little less, about twenty-one years.
Dortch boasted of his success in defeating the assistant U.S. attorney in a jury trial before twelve jurors on a federal firearms possession charge. He discussed with Judge Geeker his prior experiences in state court jury trials with the aid of counsel, in some of which he was convicted and others acquitted.
He asked for the assistance of the public defender to help him through some phases of the trial. This was the procedure he employed in federal court. The request was granted. Indeed at trial he prevailed on two counts and lost only one. He argued the propriety of including prior convictions for habitual felon classification. He compared *158 the inclusion under state law with that of federal law for guidelines purposes.
Dortch insisted on the consolidated trial of the marijuana possession charge and paraphernalia charge with the cocaine possession charge. The state intended to try only the cocaine possession charge. Dortch was ready to proceed without further discovery, including deposing the state witnesses. He insisted on proceeding in this fashion in spite of stern warnings and explanations from the trial judge and the public defender. Dortch knew something. He beat the marijuana and paraphernalia charges.
While the majority recites many, but not all, of these facts, no one reading this record can seriously contend that Dortch did not appreciate the seriousness of the trial he was confronting from procedure to penalty.
By the majority opinion the court is fulfilling its own prophecy. In concurring in Payne v. State, 642 So.2d 111 (Fla. 1st DCA 1994), Judge Kahn concluded, "[t]o avoid reversal in self-representation cases, trial judges will have to mechanistically apply Faretta's requirement that the defendant be made fully aware of the dangers and disadvantages of self-representation, 422 U.S. at 834-36, 95 S.Ct. at 2541, irrespective of a given defendant's education, experience or general competence."[2] So mechanistic is it, that the majority, after reviewing many of the facts in the case, doesn't tell us how the trial judge fell short of satisfying himself that the appellant understood the seriousness of the charges against him. It does not tell us that Dortch, having successfully defended against two charges, gets a second chance to defend against the remaining charge for which he was convicted. It doesn't tell us that the cocaine conviction was based on the recovery of the cocaine from the person of Mr. Dortch during a search of his person at the jail incident to a lawful arrest. It does not tell us how the constitution or Faretta was offended.
It does suggest that out there, somewhere, there is a litany that will satisfy appellate review. The trial judges need only find it. If they try very hard, it will happen. When it does, an appellate court will publish it. Then the trial judges can recite the same acceptable litany while each defendant affirmatively responds with all the intelligence of an amoeba, and it will be okay. I would script such a litany if I thought it were appropriate, but it is not. Artificially contriving a form to prevail over substance will not improve the quality of choice.
None of this is required by Faretta. The accused doesn't have to be very good at representing himself or know much about the law. He must only understand that judges don't think self-representation is a good idea, and most defendants would be better off with a lawyer. The accused must understand there are serious consequences that may flow from a criminal trial. Cecil Anthony Dortch knew all of this and more.
I think we should affirm Dortch's self-representation and review the remaining issues on appeal.
NOTES
[1] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
[2] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).