688 So.2d 901 (1996)
Paul Jennings HILL, Appellant,
v.
STATE of Florida, Appellee.
No. 84838.
Supreme Court of Florida.
November 27, 1996.
Rehearing Denied March 6, 1997.
*902 Michael R. Hirsh, New Haven, KY; and Roger J. Frechette, New Haven, CT, for Appellant.
Robert A. Butterworth, Attorney General and Richard B. Martell, Chief, Capital Appeals, Tallahassee, for Appellee.
Thomas A. Horkan, Jr., General Counsel, Tallahassee, for The Florida Catholic Conference, Amicus Curiae.
James Joseph Lynch, Jr., Sacramento, CA, for the Friends of Paul Jennings Hill, Amici Curiae.

REVISED OPINION
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon Paul Jennings Hill. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Early on the morning of July 29, 1994, Hill went to the Ladies Center in Pensacola, Florida, where he had been protesting against abortion for six months, and waited outside. About one hour later, a pick-up truck driven by James Herman Barrett, also containing his wife June Griffith Barrett and *903 Dr. John Bayard Britton, arrived at the Center. The Barretts volunteered at the Center on the last Friday of every month. On those days, they met Dr. Britton at the airport and escorted him to the Ladies Center, which he visited every Friday to perform legal abortions. As the truck entered the parking lot, Hill was standing in the middle of the driveway. He moved to the side, allowing the truck to pass him. As the truck drove by, it came within several feet of Hill, so that he was able to see the truck's occupants.
James Barrett parked the truck near the steps of the Center. As Barrett got out of the truck, Hill shot and killed him. Hill also shot and wounded June Barrett. He then moved closer to the truck before shooting and killing Dr. Britton. Hill was arrested shortly thereafter while walking away from the Center.
Hill was charged with two counts of first-degree premeditated murder, one count of attempted first-degree murder, and one count of shooting into an occupied vehicle. He pled not guilty to all counts. The Public Defender's Office was appointed as counsel. After Hill indicated that he wished to represent himself, the trial court conducted a hearing pursuant to Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The trial court determined that Hill had knowingly and intelligently waived his right to counsel and granted the Public Defender's motion to withdraw. However, the trial court also appointed the Public Defender's Office as "standby counsel" to aid Hill if he requested help and to be available to represent him in the event representation became necessary.
The State filed a motion in limine to prevent Hill from presenting a defense of necessity/justification. The trial court denied Hill's request to have an out-of-state attorney argue at the hearing on the State's motion, but renewed the offer of counsel, whereupon Hill reaffirmed his desire to represent himself. At trial, Hill repeated his desire to present the defense of justification or necessity, but the trial court did not permit it. Hill's participation otherwise throughout the trial was minimal. He was subsequently convicted on all four counts.
The jury recommended a sentence of death on both counts of murder by a vote of 12-0.
The trial court's sentencing order found that the following two aggravators had been established beyond a reasonable doubt for both murders: (1) the defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person, as evidenced by the contemporaneous convictions; and (2) the murder had been committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. This second aggravator was proven with evidence establishing that Hill had stated previously that abortionists should be executed, had purchased a shotgun and ammunition two days before the murders and practiced at a firing range on two separate occasions during those two days, had modified the shotgun, had arrived at the Center one hour before the victims, and had proudly stood looking over the bodies after he shot them. With respect to Dr. Britton's murder, the trial court found a third aggravator of especially heinous, atrocious, or cruel, established by the agony Dr. Britton had to endure in having time to anticipate and contemplate his own imminent death while he watched Hill reload his gun and approach the Barretts' vehicle.
In statutory mitigation, the trial court found that Hill had no significant history of prior criminal activity. Finding that the aggravating circumstances outweighed the mitigating circumstances presented, the trial court sentenced Hill to death on each of the two murder convictions.
Hill first contends that the trial court's inquiry did not meet the dictates of both Faretta and Florida Rule of Criminal Procedure 3.111(d) because he was not apprised of the difficulty and complexity involved in mounting the defense of justification. Specifically, Hill argues that the trial court did not inform him that because he was in jail, he would not be able to research, investigate, and obtain witnesses, thereby making it impossible for him to establish the factual predicate for his complex defense. Nor, Hill asserts, was he sufficiently educated *904 and experienced in the law to understand how difficult it would be to present this defense.
In Faretta, the United States Supreme Court held that an accused has the right to self-representation so long as the right to the assistance of counsel is knowingly and intelligently waived. To achieve a valid waiver, a defendant must be made aware of the dangers and disadvantages of self-representation, so that the defendant "knows what he [or she] is doing and ... [the] choice is made with eyes open." Faretta, 422 U.S. at 835, 95 S.Ct. at 2541 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)). In Faretta, the Court was satisfied that the defendant in that case had knowingly and intelligently waived the right to counsel. The record showed that the defendant "was literate, competent, and understanding, and that he was voluntarily exercising his informed free will." Id. The trial judge had admonished the defendant that it was a mistake not to accept the assistance of counsel, and that he would be required to follow the rules of procedure. Id. at 835-36, 95 S.Ct. at 2541. In finding that the defendant's waiver was valid, the Court explicitly noted that a defendant's technical legal knowledge is irrelevant to the determination of whether he or she has made a valid waiver of the right to counsel. Id. at 836, 95 S.Ct. at 2541.
Rule 3.111(d)(2) precludes a trial court from finding a valid waiver "until the entire process of offering counsel has been completed and a thorough inquiry has been made into both the accused's comprehension of that offer and the accused's capacity to make an intelligent and understanding waiver." Paragraph (d)(3) requires a trial court to reject a defendant's waiver "if it appears that the defendant is unable to make an intelligent and understanding choice because of a mental condition, age, education, experience, the nature or complexity of the case, or other factors."
In this case, the trial judge conducted an exhaustive inquiry before concluding that Hill's waiver was valid. He made sure that Hill knew the State would seek the death penalty. He made sure that Hill understood he would be in jail and therefore unable to prepare as well as counsel could on his behalf. The judge further explained that the legal system has its own terms of art and procedure that would be unfamiliar to a layperson. More importantly, he made sure that Hill would not expect any special help simply because he was representing himself and that Hill knew he would be treated the same as an attorney. We conclude that Hill was adequately warned of the dangers and disadvantages of self-representation as required by Faretta.
The trial judge also inquired into Hill's age, education, and experience, as well as his physical and mental condition.[1] As to the nature and complexity of the case, there is nothing particularly complex about the defense of justification or necessity that would lead us to conclude that Hill was unable to make a fully intelligent and understanding choice to waive counsel under rule 3.111(d). In any event, the prosecutor specifically explained to Hill that he might be thwarted in his efforts to present a defense if he could not properly lay a foundation. Nor does the fact that this is a death penalty case make it so complex that a defendant cannot make an intelligent choice to represent him or herself. It was sufficient that the judge made sure that Hill knew the State would be seeking the death penalty. E.g., Hamblen v. State, 527 So.2d 800 (Fla.1988); Muhammad v. State, 494 So.2d 969 (Fla.1986); Goode v. State, 365 So.2d 381 (Fla.), cert. denied, 441 U.S. 967, 99 S.Ct. 2419, 60 L.Ed.2d 1074 (1979).
*905 In sum, we conclude that the inquiry in this case complied with both Faretta and rule 3.111(d). We emphasize that a defendant does not need to possess the technical legal knowledge of an attorney before being permitted to proceed pro se. As the Supreme Court stated in Godinez v. Moran, 509 U.S. 389, 399, 113 S.Ct. 2680, 2686-87, 125 L.Ed.2d 321 (1993), "the competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself." Thus, the judge was not required to give Hill a lesson on how to try a lawsuit before finding that Hill was making a knowing waiver of his right to counsel. It was enough for Hill to be alerted generally to the difficulties of navigating the legal system, and in this case the inquiry went beyond the minimum requirements to warn Hill of the particular difficulty of laying a predicate for a defense.[2]
We next address Hill's argument that the trial court erred in granting the State's motion in limine.[3] Both the motion and the State's memorandum in support thereof sought to preclude Hill from presenting any evidence concerning abortion and his views on the subject as support for the common law defense of necessity or justification. Hill's memorandum in opposition did not directly address the State's argument but instead argued that Hill was entitled to present this evidence to establish the statutory defense found in section 776.012, Florida Statutes (1993), entitled "Use of force in defense of person." That statute states in relevant part:
[A person] is justified in the use of deadly force only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another or to prevent the imminent commission of a forcible felony.
While section 776.012 is not identical to the defense of necessity, see Linnehan v. State, 454 So.2d 625 (Fla. 2d DCA 1984),[4] we find the case law cited by the State relevant to our analysis here, as both the necessity defense and section 776.012 contemplate that a defendant may act to prevent some "harm," even if the defendant's act otherwise would be unlawful. Linnehan, 454 So.2d at 626; § 776.012.
The State cites no Florida appellate court that has ruled on the subject of whether the defense of necessity or justification, whether it be common law or statutory, is available to a defendant whose crime was committed in opposition to abortion. However, the law outside this state, of which there is a significant body, is virtually unanimous on the subject.[5] In every appellate court found to have *906 considered the issue, the defendants were precluded as a matter of law from asserting necessity or justification as a defense to trespass violations committed in protest of abortion. For example, in City of Wichita v. Tilson, 253 Kan. 285, 855 P.2d 911, cert. denied, 510 U.S. 976, 114 S.Ct. 468, 126 L.Ed.2d 420 (1993), one of the more recent cases on the subject, the Kansas Supreme Court opined:
Regardless of what name is attached to the defense (and for the sake of simplicity we will refer to it as the necessity defense) one thing is clear: The harm or evil which a defendant, who asserts the necessity defense, seeks to prevent must be a legal harm or evil as opposed to a moral or ethical belief of the individual defendant.
. . . .
The courts have invoked several different rationales in rejecting application of the defense. The majority of courts reason that because abortion is a lawful, constitutionally protected act, it is not a legally recognized harm which can justify illegal conduct.
Id. 855 P.2d at 914-16. We agree with Tilson and other cases holding that, as a matter of law, legal abortion is not a recognized harm and cannot be used to invoke the necessity defense. See Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); § 390.001, Fla. Stat. (1993). For the same reason, abortion also cannot constitute "harm" under section 776.012.[6]
As a practical matter, permitting a defendant to vindicate his or her criminal activity in such a manner would be an invitation for lawlessness. As the court explained in Commonwealth v. Wall, 372 Pa.Super. 534, 539 A.2d 1325, appeal denied, 521 Pa. 604, 555 A.2d 114 (1988), when faced with a similar argument:
To accept appellant's argument would be tantamount to judicially sanctioning vigilantism. If every person were to act upon his or her personal beliefs in this manner, and we were to sanction the act, the result would be utter chaos. In a society of laws and not of individuals, we cannot allow each individual to determine, based upon his or her personal beliefs, whether another person may exercise her constitutional rights and then allow that individual to assert the defense of justification to escape criminal liability. We recognize that, despite our proscription, some individuals, because of firmly held and honestly believed convictions, will feel compelled to break the law. If they choose to do so, however, they must be prepared to face the consequences. Thus, such private attempts to circumvent the law with the aim to deprive a pregnant woman of her right to obtain an abortion will not be tolerated by this Court.
Id. 539 A.2d at 1329-30 (footnote omitted). Thus, we find no error in the trial court's granting the motion in limine.
Hill's other guilt phase arguments may be summarily rejected. There was no error in admitting the statement volunteered by Hill at the time of his arrest that "at least there will be no more babies killed there today," because the statement was not the result of custodial interrogation. Moreover, there was no objection to its admission at the trial. Likewise, there was no objection to matters occurring in voir dire and closing argument of which he now complains, and such perceived errors, even if they existed, were not fundamental in nature. There was also no objection to giving the standard jury instruction on excusable homicide and justifiable use of deadly force. In any event, the instruction was required in order to fully instruct on the crimes comprising homicide. See State v. Smith, 573 So.2d 306 (Fla.1990). The judge did not err in failing to instruct the jury on Hill's right not to testify because Hill specifically asked that such an instruction not be given. The argument that the jury was permitted to see certain exhibits not in evidence is not supported by the record.
Finally, we discuss Hill's contention that he was unfairly limited in his defense during the penalty phase. After the State concluded its penalty phase case, Hill rested without testifying or presenting other evidence. *907 The prosecutor then gave his closing argument. Thereafter, Hill began to address the jury by saying, "You have a responsibility to protect your neighbor's life and to use force if necessary to do so." At this point, the State objected on the grounds that the argument was irrelevant and did not go to any of the evidence admitted at trial. At the bench, the trial judge instructed Hill that closing arguments, whether at the guilt or penalty phase, must be relevant to the issues presented during that particular stage. The judge reminded Hill that he had agreed to abide by the court's rulings. Ultimately, the judge overruled the State's objection, reasoning that it likely had been made in anticipation of an attempt by Hill to raise the defense of justification or necessity. Thus, the judge stated:
THE COURT: Quite honestly, at this point for the record I will take and overrule the objection. And I will give you the benefit of allowing you to make your point and argue your case, because it is very important, Mr. Hill.
MR. HILL: Yes, sir.
THE COURT: I will give you wide latitude to argue your case.
Hill then concluded his argument by saying:
You have a responsibility to protect your neighbor's life and to use force if necessary to do so. In an effort to suppress this truth, you may mix my blood with the blood of the unborn and those who have fought to defend the press. However, truth and righteousness will prevail. And may God help you to protect the unborn as you would want to be protected.
Clearly, Hill was not prevented from presenting his case during the penalty phase.[7] He elected not to put on any evidence, and the only objection made to his closing argument was overruled. Moreover, there is no question that the jury was aware that he killed his victims in order to prevent them from performing abortions.
Hill does not specifically contest any of the aggravating circumstances found by the trial judge, although he inferentially suggests that the murders did not meet the criteria for being cold, calculated, and premeditated because they were committed with the pretense of moral justification. However, in Dougan v. State, 595 So.2d 1 (Fla.), cert. denied, 506 U.S. 942, 113 S.Ct. 383, 121 L.Ed.2d 293 (1992), we upheld the same aggravating circumstance in the face of a dissenting opinion which argued that a murder had been committed with a pretense of moral justification in order "to focus attention on a chronic and pervasive illness of racial discrimination and of hurt, sorrow, and rejection." Id. at 7. We stated:
While Dougan may have deluded himself into thinking this murder justified, there are certain rules by which every civilized society must live. One of these rules must be that no one may take the life of another indiscriminately, regardless of what that person may perceive as a justification.
Id. at 6. In this case, the trial judge properly rejected the proposition that by killing persons in order to prevent them from performing legal abortions, Hill acted under a pretense of moral justification. Moreover, even if it could be said that the finding of this aggravating circumstance was in error, the error would be harmless beyond a reasonable doubt.
Finally, we conclude that the evidence fully supports Hill's conviction and that the death penalty ordered in his case does not suffer from a lack of proportionality.
Accordingly, we affirm the convictions and sentences of death.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING and WELLS, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion.
ANSTEAD, Judge, concurring in part, dissenting in part.
I concur with the majority's resolution of all of Hill's claims of error as to his guilt and *908 penalty phase proceedings save one: that the trial court did not err in finding a statutory aggravator that requires proof beyond a reasonable doubt that Hill was not acting with a "pretense" of moral justification.
In section 921.141, Florida Statutes (1995), the legislature has set out guidelines which the trial courts of our state must consider in determining whether death or life imprisonment is the appropriate penalty once a defendant is convicted of capital murder. Some of the matters set out in the statute may be considered in aggravation while others may be considered in mitigation. An aggravator must be established by proof beyond a reasonable doubt. Obviously, the finding of one or more of the aggravators or mitigators is critical to any penalty analysis.
In this scheme, the legislature has provided that one of the factors that could be considered in aggravation is that: "the capital felony was a homicide and was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification." § 921.141(5)(i)(emphasis added). The trial court found this aggravator proven beyond a reasonable doubt. This constitutes clear error. While there is abundant evidence in the record to support a finding that the murders here were "committed in a cold, calculated and premeditated manner," it is undisputed that Hill acted under a pretense of moral justification, i.e., his moral opposition to abortion, thereby precluding the application of this aggravator.[8]
In Holly v. Auld, 450 So.2d 217 (Fla.1984), this Court explained that while extrinsic aids and rules of statutory construction and interpretation are available to courts where statutes are ambiguously worded, "[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." Id. at 219 (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 1144, 137 So. 157 (1931)). We further explained that courts are "without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power." Holly v. Auld, 450 So.2d at 219 (quoting American Bankers Life Assurance Co. v. Williams, 212 So.2d 777, 778 (Fla. 1st DCA 1968) (alteration in original). Accordingly, where a statute is clear and unambiguous, a court must enforce the law according to its terms and is precluded from construing the statute differently. See, e.g., State v. Egan, 287 So.2d 1 (Fla.1973); Van Pelt v. Hilliard, 75 Fla. 792, 798-99, 78 So. 693, 694-95 (1918). That is our obligation here.
In Banda v. State, 536 So.2d 221 (Fla. 1988), cert. denied, 489 U.S. 1087, 109 S.Ct. 1548, 103 L.Ed.2d 852 (1989), we noted that the word "pretense" means "`something alleged or believed on slight grounds: an unwarranted assumption.'" Id. at 225 n. 2 (quoting Webster's Third New International Dictionary 1797 (1981)). Thus, we interpreted the section 921.141(5)(i) "pretense" clause in a manner consistent with its plain meaning.[9] We also concluded that a defendant's own unrebutted statements may support the existence of a "pretense of moral or legal justification" unless, of course, those statements are "wholly irreconcilable with the *909 facts of the murder." Id. at 224-25. Consistent with our opinions on this issue, one legal commentator has stated:
The pretense clause means that even if one kills a victim in a cold and calculated manner, and if the killer thinks he is morally or legally justified in doing so, the aggravating factor should not apply. The killer need not actually be morally or legally justified; the statute only requires that he have some pretense of justification. Indeed, paragraph (5)(i) could not logically require actual legal or moral justification as there is no actual legal or moral justification for a cold and calculated killing. Thus it makes no sense to maintain that the clause calls for this interpretation.
Jonathan Kennedy, Florida's "Cold, Calculated and Premeditated" Aggravating Circumstance in Death Penalty Cases, 17 Stetson L.Rev. 47, 101 (1987). Further, we have not hesitated to find this statutory aggravator not proven in other cases where we found that the defendant had acted under some "pretense" of moral or legal justification. See, e.g., Christian v. State, 550 So.2d 450 (Fla.1989); Ross v. State, 474 So.2d 1170 (Fla.1985); Cannady v. State, 427 So.2d 723 (Fla.1983); Blair v. State, 406 So.2d 1103 (Fla.1981).[10]
We must remember that the issue before us is not whether we tolerate or condone murder. That we do not approve of Hill's conduct is firmly established by our unanimous affirmance of his conviction for two capital murders, as well as our affirmance of the trial court's order on Hill's motion in limine and our rejection of his claimed necessity defense. As the majority correctly explains, Hill's religious belief that abortion is evil is not legally cognizable as a "necessity" defense under the common law or section 776.012. Nor is it an actual justification for Hill's blatant criminal conduct.
The only issue under discussion is whether a discrete aggravating circumstance specifically defined by the legislature has been established by proof beyond a reasonable doubt. The legislature obviously meant something when it imposed the "without pretense" condition as a qualification for invocation of the aggravating factor set out in section 921.141(5)(i). If there was not "a pretense of moral ... justification" here, it is doubtful whether these words could ever have any real meaning or application. Inexcusable though his conduct may be, it is undisputed that Hill acted under a pretense of moral justification; and a pretense is all section 921.141(5)(i) requires in order to preclude the application of this particular aggravator. For that reason, I cannot agree that this aggravator was properly invoked in this case.
NOTES
[1] The assistant public defender who represented Hill at the Faretta hearing stated that he had no doubts based upon his dealings with Hill that Hill was competent to make the motion to represent himself. Hill told the trial judge that he would not cooperate with any court-appointed medical doctors for an examination. The judge was not required to order a futile examination. Despite the absence of expert testimony on this issue, the record demonstrates that Hill's mental condition did not affect his ability to make an intelligent and understanding choice to waive his right to counsel. See Muhammad v. State, 494 So.2d 969 (Fla.1986), cert. denied, 479 U.S. 1101, 107 S.Ct. 1332, 94 L.Ed.2d 183 (1987).
[2] The safeguards of Faretta and rule 3.111(d) were extended throughout the entire course of the trial: After a federal trial against Hill in which he represented himself, the trial judge in this case held a supplemental Faretta hearing to ensure that Hill still wished to represent himself after his experience in federal court. The trial judge renewed the offer of counsel throughout the entire case and at each stage of the proceedings against Hill, including the penalty phase. We also note that Hill indicated that he would elect to represent himself even if he did not have the benefit of standby counsel.
[3] We consider this issue preserved for review. At trial, after the State rested, Hill repeated his desire to present the defense afforded in section 776.012, Florida Statutes (1993).
[4] The essential elements of the necessity defense were recited in Linnehan v. State, 454 So.2d 625 (Fla. 2d DCA 1984):

[D]efendants must have reasonably believed that their action was necessary to avoid an imminent threatened harm, that there are no other adequate means except those which were employed to avoid the threatened harm, and that a direct causal relationship may be reasonably anticipated between the action taken and the avoidance of the harm.
Id. at 626 (quoting United States v. Cassidy, 616 F.2d 101, 102 (4th Cir.1979)).
[5] Numerous courts have considered whether the necessity defense applies to abortion trespass cases and concluded that it does not. See City of Wichita v. Tilson, 253 Kan. 285, 855 P.2d 911, 916, (listing cases from 19 states and the District of Colombia), cert. denied, 510 U.S. 976, 114 S.Ct. 468, 126 L.Ed.2d 420 (1993). See also United States v. Turner, 44 F.3d 900 (10th Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 2250, 132 L.Ed.2d 258 (1995); Northeast Women's Center, Inc. v. McMonagle, 868 F.2d 1342 (3d Cir.), cert. denied, 493 U.S. 901, 110 S.Ct. 261, 107 L.Ed.2d 210 (1989); State v. Rein, 477 N.W.2d 716 (Minn. Ct.App.1991), review denied (Jan. 30, 1992); City of Missoula v. Asbury, 265 Mont. 14, 873 P.2d 936 (1994); Jones v. City of Tulsa, 857 P.2d 814 (Okla.Crim.App.1993); and State v. Horn, 126 Wis.2d 447, 377 N.W.2d 176 (App.1985), aff'd, 139 Wis.2d 473, 407 N.W.2d 854 (1987).
[6] Our conclusion that abortion is not a legally cognizable harm disposes of the need to address whether an unborn fetus is "another" within the meaning of section 776.012.
[7] The State's motion in limine was directed only toward precluding Hill from asserting justification or necessity as a legal defense at the guilt phase of the trial.
[8] Indeed, The Florida Catholic Conference, a statewide organization of Catholic bishops, has filed an Amicus Curiae brief supporting Hill's claim of error on this issue. In their brief, the bishops pointedly assert:

Amicus condemns the killing of Dr. Britton and Mr. Barrett. But whether shooting Dr. Britton and his escort was the right thing to do is not the question before this Court. The legal question before this Court is whether Mr. Hill's deep and abiding beliefs that human life begins at conception, which beliefs are rooted solidly in the mainline religious and philosophical traditions of our country and our state, and which beliefs were the basis for Mr. Hill's acts, gave his actions at minimum a "pretense" of moral or legal justification.
[9] The cold, calculated and premeditated aggravator was enacted by the legislature in 1979. See Ch. 79-353, Laws of Fla. The staff analysis for this statute does not address or discuss the "pretense" clause contained in the statute. Accordingly, we must assume that the legislature meant what it said when it explicitly used the word "pretense" in section 921.141(5)(i). See Florida State Racing Commission v. Bourquardez, 42 So.2d 87, 88 (Fla.1949).
[10] The majority has erroneously characterized Justice McDonald's dissenting opinion in Dougan v. State, 595 So.2d 1 (Fla.), cert. denied, 506 U.S. 942, 113 S.Ct. 383, 121 L.Ed.2d 293 (1992), as disagreeing with the Dougan majority decision upholding the finding of the CCP aggravator. Justice McDonald's separate opinion expressly agrees that the evidence was sufficient to support the CCP aggravator. His entire opinion is focused on the issue of proportionality. Further, the quote from Dougan relied upon by the majority also comes from a discussion of proportionality, not CCP, and in fact was specifically focused on a claim that the Dougan murder should be classified with murders taking place in an emotional domestic setting. There was no colorable claim of moral or legal justification in Dougan. The Court was unanimous in Dougan in approving CCP and rejecting what was at most an attempt to claim a political justification. Dougan is wholly dissimilar and distinguishable from the circumstances here.