698 So.2d 315 (1997)
Joseph Henry POTTS, Appellant,
v.
STATE of Florida, Appellee.
No. 96-1769.
District Court of Appeal of Florida, Fourth District.
July 30, 1997.
Clarification Denied August 29, 1997.
*316 Gary S. Israel of Gary S. Israel, P.A., West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.
FARMER, Judge.
We affirm the conviction for sale of cocaine but write briefly on the issue involving self representation at trial by defendant. Without detailing all of the events that led to the discharge of appointed counsel, it is enough to say that defendant himself persistently and consistently sought the discharge. The trial court's inquiry was sufficient under Hardwick v. State, 521 So.2d 1071 (Fla.1988), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988), and Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973). We also conclude that the trial court complied with Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
In Faretta the Court rejected the notion that the state can compel a defendant to accept a lawyer he does not want. In the words of the Court:
"The value of state-appointed counsel was not unappreciated by the Founders, yet the notion of compulsory counsel was utterly foreign to them. And whatever else may be said of those who wrote the Bill of Rights, surely there can be no doubt that they understood the inestimable worth of free choice."
422 U.S. at 833-34, 95 S.Ct. at 2540. Indeed, as the Court further explained its holding:
"It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense. Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of `that respect for the individual which is the lifeblood of the law.'"
422 U.S. at 834, 95 S.Ct. at 2541. Hence it is obvious that a defendant has a right to represent himself and may not be required to accept the lawyer given him by the state.
The crux of proper self-representation under Faretta is voluntariness, by which the Court means a knowing and intelligent waiver of counsel. To return again to the words of the Court:
"When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must `knowingly and intelligently' forgo those relinquished benefits.

*317 Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that `he knows what he is doing and his choice is made with eyes open.'
"Here, weeks before trial, Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel. The record affirmatively shows that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his informed free will. The trial judge had warned Faretta that he thought it was a mistake not to accept the assistance of counsel, and that Faretta would be required to follow all the `ground rules' of trial procedure. We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on voir dire." [e.s.]
422 U.S. at 835-36, 95 S.Ct. at 2541.
While the Court required that the defendant claiming the right to represent himself "should be made aware of the dangers and disadvantages of self-representation," the Court then proceeded to note in the record before it that "[t]he trial judge had warned Faretta that he thought it was a mistake not to accept the assistance of counsel." In giving this warning, the trial judge in Faretta apparently did not engage in any extensive colloquy with him about all of the possible dangers lying within self-representation. More importantly, the Court's opinion does not suggest that the warning there included a recapitulation of the nature of the charges against the defendant and the possible penalties, or the like. Thus, there is nothing in Faretta suggesting that a knowing and intelligent assertion of self-representation depends on the trial court engaging in a catalog check list of every possible criminal law and procedure that may bear on the defense of the case. Nor does the opinion even hint that the court must cover matters presumably taken up at the arraignment, such as the nature of the charges and all the possible penalties, if the self-representation proves unsuccessful.
Our reading of Faretta is consistent with recent decisions of the Florida supreme court on the subject. In Hill v. State, 688 So.2d 901 (Fla.1996), a death penalty case, the court affirmed a waiver of counsel under Faretta, saying:
"We emphasize that a defendant does not need to possess the technical legal knowledge of an attorney before being permitted to proceed pro se. As the Supreme Court stated in Godinez v. Moran, 509 U.S. 389, 399, 113 S.Ct. 2680, 2686-87, 125 L.Ed.2d 321 (1993), `the competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself.' Thus, the judge was not required to give Hill a lesson on how to try a lawsuit before finding that Hill was making a knowing waiver of his right to counsel. It was enough for Hill to be alerted generally to the difficulties of navigating the legal system, and in this case the inquiry went beyond the minimum requirements to warn Hill of the particular difficulty of laying a predicate for a defense." [e.o.]
688 So.2d at 905. More recently, in State v. Bowen, 698 So.2d 248 (Fla.1997), the court held that:
"once a court determines that a competent defendant of his or her own free will has `knowingly and intelligently' waived the right to counsel, the dictates of Faretta are satisfied, the inquiry is over, and the defendant may proceed unrepresented. The court may not inquire further into whether the defendant `could provide himself with a substantively qualitative defense' ... for it is within the defendant's rights, if or she so chooses, to sit mute and mount no defense at all."
698 So.2d at 251. Neither case, however, expressly disapproves earlier district court opinions requiring more extensive inquiry than that in Faretta itself.
*318 For the above reasons, we disagree with Dortch v. State, 651 So.2d 154 (Fla. 1st DCA 1995), in which the first district concluded that the obligation to warn a defendant of the "disadvantages of self-representation" necessarily requires that the trial judge tell the defendant of the "seriousness of the charges against him, the potential sentence he might face if found guilty, [and] the consequences of habitualization." 651 So.2d at 157. As the supreme court explained concerning the death penalty in Hill:
"Nor does the fact that this is a death penalty case make it so complex that a defendant cannot make an intelligent choice to represent him or herself. It was sufficient that the judge made sure that Hill knew the State would be seeking the death penalty. E.g., Hamblen v. State, 527 So.2d 800 (Fla.1988); Muhammad v. State, 494 So.2d 969 (Fla.1986); Goode v. State, 365 So.2d 381 (Fla.), cert. denied, 441 U.S. 967, 99 S.Ct. 2419, 60 L.Ed.2d 1074 (1979)."
688 So.2d at 904. We know of no reason why in noncapital cases the court must review the possible sentencing alternatives to find that a waiver of counsel under Faretta is knowing and intelligent.
Actually, we agree with Judge Barfield in dissent in Dortch where he said:
"None of this is required by Faretta. The accused doesn't have to be very good at representing himself or know much about the law. He must only understand that judges don't think self-representation is a good idea, and most defendants would be better off with a lawyer. The accused must understand there are serious consequences that may flow from a criminal trial."
651 So.2d at 158. Our own reading of Faretta is exactly like Judge Barfield's.
Here the trial judge twice told defendant that it would be a big mistake for him to represent himself. She frankly told him at one point that she doubted that he had sufficient legal knowledge to do an adequate job. In these comments, the court was adequately conveying the thought that there was considerable danger in rejecting the services of the lawyer. Nevertheless, defendant insisted that he would prefer to represent himself rather than take his chances with the appointed lawyer, whom he characterized as argumentative. We reject defendant's late arising perception that he should not have been allowed to have the "fool for the client."
AFFIRMED; CONFLICT CERTIFIED.
GUNTHER and POLEN, JJ., concur.