FARMER, J.,
dissenting.
I join Judge Taylor’s dissent, as it reflects my own analysis. Her cogent opinion makes clear that the majority’s transubstantiation of this statute has the antithetical result of gutting its legislative purpose and substituting in its place the very one-sided contractual fee provisions the Legislature thought it had corrected. I write only to add some comments about the clarity of the statute before the majority changed it and their attempt to justify their alteration.
Sometimes the plain meaning of words becomes obvious only after some examination. But the very effort to expose plain meaning should not be deemed by itself to confirm ambiguity. This is not, I think, a Joseph Heller world in which demonstrating obvious implications and clear meaning is treated as unquestionable evidence of ambiguity. So I think it would be of benefit to do a grammatical exegesis of this statute to show why its meaning is most definitely not what the majority erroneously says it is.
The statute’s substance is found in a single sentence.[2] Grammarians would classify that sentence as “complex”[3] because it is composed of a subordinate clause[4] and an independent clause.[5] The subordinate clause functions adverbially, laying down the condition under which the *901 independent clause will have effect. The independent clause expresses the effect created when the adverbial condition exists. The subordinate clause is thus a statutory predicate to broaden a one-sided contractual attorneys fees provision into bilateral rights to fees when any party successfully enforces the contract.
From its plain text the predicate requires this (and only this): an explicit, one-sided, contractual provision allowing only the named party to recover attorneys fees from an adverse party if the named party should have to take any action to enforce a right under the contract. The bilateral reforms that one-sided contractual attorneys fee provision by operation of law to allow an adverse party also to recover attorneys fees from the named party if the adverse party prevails in any action to enforce his unique rights under the contract.
Whatever the form of action, the predicate condition designates any action by the named party entitling it alone to recover fees as the basis for a bilateral right to fees by the adverse party in any action involving (“with respect to”) the contract. The predicate condition does not specify any particular form of action as the basis for the one-sided right to fees. The actual form of action by the named party (even if it should bring such an action) thus has no bearing on the adverse party’s bilateral statutory right to fees for successfully enforcing the contract in his favor.
The Legislature undoubtedly understood that the named party with the one-sided right to attorneys fees would be unlikely to enforce rights of an adverse party. Hence the unrestricted term any action in the predicate eliminates any limiting effect or consequence resulting from the particular form of contract relief a named party might actually assert in an action. Instead, the predicate condition requires only that the named party can bring a contract action of any kind and recover fees. The universal term any action makes clear that any right of the named party to fees effectuates a statutory transformation into a bilateral statutory right to fees. Were that not so, the statute itself would lack meaningful reformative effect because fees would still be restricted to only those essentially allowed by the contract.
Hence the term any action cannot reasonably be construed — as the majority hold — to mean only the unique kind of action expressed in the one-sided fees provision.[6] Any action must necessarily mean any action.
There are multiple possibilities. One possible action might turn out to be a claim for specific performance of a closing required by contract for exchanging performance of mutual promises. Or it might be a declaratory judgment action to sustain the named party’s interpretation of required performance by either party. Or it might even be — as happened here — simply an action by a vendor of goods and services for the price.
Obviously where the contract is between a seller and buyer, seller’s most probable action will be to recover the contract price. On the other hand, a buyer could seek to enforce a contractual right with respect to the quality or amount of the goods or services it purchased under a contract warranty as to the nature, quality and kind of goods or services sold. In either case, the term any action in both the predicate and bilateral clauses makes absolutely *902 plain and indisputable that the statute covers the entire universe of possible actions by any party involving enforcement of contract rights and makes the one-sided right to prevailing party fees bilateral. Judge Taylor’s opinion nicely demonstrates this is the obvious (indeed the only conceivable) meaning of the provision.[7]
The term any action could hardly be clearer. It is incapable of being thought ambiguous.[8] It requires no interpreting. Because there is no statutory ambiguity requiring construction or interpretation, the canon requiring strict construction of fees has utterly no application in this case. In McLaughlin v. State, 721 So.2d 1170 (Fla.1998), the court reaffirmed its longstanding policy that:
“when the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.”
721 So.2d at 1172 (quoting A.R. Douglass Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)). The court has equally made clear:
“If the language of the statute is clear and unequivocal, then the legislative intent must be derived from the words used without involving incidental rules of construction or engaging in speculation as to what the judges might think that the legislators intended or should have intended[9] [e.s.]
Moreover the court has repeatedly applied the holding that:
“The courts of this state are without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power.”[10]
Courts “must give full effect to all statutory provisions”[11] and “avoid readings that would render part of a statute meaning *903 less.”[12]
And so the majority’s reliance on any interpretive canon conflicts with the first, the essential, the most elementary rule of all statutory construction in Florida. Plain text controls. Plain meaning needs no construction. No interpretive device altering the meaning of plain text may be employed.[13] Unless interpretation is necessary, it is necessary not to engage in interpretation. If the Legislature did not intend the plain meaning of the text it has enacted, it can always amend the statute to state in other plain words what it does mean.[14]
The majority acknowledge in one breath that “the statute means what it says and says what it means” yet in the next proceed to “interpret” it to say what they mean. But what they have done in this case is not simple interpretation of statutory text. No, there is a whole lot more going on here than mere interpretation. Contrary to Holly v. Auld, the majority aetually modifies and limits express statutory terms with reasonable and obvious broader implications to mean something much narrower.
Under their view of stiict constmction, the majority have transformed § 57.105(7) — without explicitly phrasing it this way — into a tool suitable for advancing a judicial policy disapproving statutes that expand consumer rights to attorneys fees. Their decision implies a new principle that the judicially-created canon of strict interpretation of attorneys fee provisions equally binds legislatures enacting substantive rights to fees — as though this strict fee interpretation has a force similar to constitutional law. No broad fee statutes are allowable. Only laws strictly limiting fees may be enacted.[15]
In spite of statutory text plainly granting the right, their version reforms the statutory reformation of one-sided attorneys fees contracts to deny fees to buyer for successfully enforcing his own eontrac- *904 tual rights. Their version transmutes the statutory bilateral fee provision applying to any action to mean instead only “if the adverse party prevails in the named party’s action.”[16] Their version allows fees to the adverse party only for fending off the named party’s action. Their strict construction of § 57.105(7) modifies and limits the statute’s clear words. Consumers’ rights to fees are not likely to survive more “bilateral” fees of their kind.
Theirs is not strict construction. Theirs is not strict interpretation. Strictly speaking, theirs is nothing less than judicial legislation. The words of their holding should begin thus: Be it enacted by the Fourth District Court of Appeal, for their form of reformation actually enacts an entirely new and different statute for this district.
I cannot join such judicial legislation, and so I dissent.
HAZOURI, J., concurs.

. "If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract." § 57.105(7), Fla. Stat. (2009).

. Grammarians recognize three essential types of English sentences: simple (a single independent clause only), complex (a subordinate clause and an independent clause), and compound (two independent clauses, often linked with a coordinate conjunction such as and, or, for, nor, so, but, yet).

. "If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract ...”

. “The court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract."

. See Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693, 695 (1918) ("Whether the law be expressed in general or limited terms, the Legislature should be held to mean what they have plainly expressed, and consequently no room is left for construction”).

. I folly agree with Judge Taylor that we should use this occasion to get rid of Subway Restaurants Inc. v. Thomas, 860 So.2d 462 (Fla. 4th DCA 2003), to the extent that in dicta it suggests the interpretation on which the majority relies.

. The broad reach of any action was doubtlessly meant by the Legislature to apply in spite of occasions when fees might seem burdensome. But even if we can conceive of some grim hypothetical fee circumstances, imposing such fees does not make the statutory term any action ambiguous. It simply reflects a legislative policy decision that the benefits of bilateral rights to fees outweigh such painful effects. Cf. Forsythe v. Longboat Key Beach Erosion Cont. Dist., 604 So.2d 452, 454 (Fla.1992) ("Even where a court is convinced that the Legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity” (quoting Van Pelt, 78 So. at 694)).

. Tropical Coach Line Inc. v. Carter, 121 So.2d 779, 782 (Fla.1960); see also Fla. Birth-Related Neurological Injury Comp. Ass’n v. Dep’t of Admin. Hrgs., 29 So.3d 992, 998 (Fla.2010) (same); Kephart v. Hadi, 932 So.2d 1086, 1091 (Fla.2006) (same); Am. Home Assur. Co. v. Plaza Materials Corp., 908 So.2d 360, 373 (Fla.2005) (same); Zuckerman v. Alter, 615 So.2d 661, 663 (Fla.1993) (same).

. Holly v. Auld, 450 So.2d 217, 219 (Fla.1984); Velez v. Miami-Dade County Police Dep’t., 934 So.2d 1162, 1164-65 (Fla.2006) (same); Donato v. Amer. Tel. & Tel. Co., 767 So.2d 1146 (Fla.2000) (same); Fla. Dep’t Bus. & Prof. Reg. v. Inv. Corp. of Palm Beach, 747 So.2d 374, 382 (Fla.1999) (same); McLaughlin, 721 So.2d at 1172; Pub. Health Trust of Dade County v. Lopez, 531 So.2d 946, 948-49 (Fla.1988) (same); Hill v. State, 688 So.2d 901, 908 (Fla.1996) (same).

. Forsythe, 604 So.2d at 455.

. Unruh v. State, 669 So.2d 242, 245 (Fla.1996).

. See e.g. Gulfstream Park Racing Ass'n Inc. v. Tampa Bay Downs Inc., 948 So.2d 599 (Fla.2006) ("[w]hen the language of [a] statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction”).

. As an appellate judge neck deep in reading statutes, it strikes me that plain and unambiguous statutory text is becoming rarer and rarer. After all, the political process involves multiple interests and factions. Legislators often promote differing goals. The dominance and pervasiveness of the one-minute news cycle of media-webs-blogs creates an electorate instantly aware of legislative activity. Legislators may detect pressures to vote for proposed statutes even though they would prefer not to do so. Legislation is thus filled with compromise and textual tinkering. Legislators vote for trade-offs for many reasons, some private and unexpressed. Clarity recedes before the necessity to explain a stance and a vote. Judges cannot possibly find a dominant “legislative intent” in statutes because the process yields no shrouded yet recognizable intendment of that kind. Legislators enact compromises on text, not intents. When text is not plain, judges are stuck with looking for the meaning of the text enacted, not some different hidden intent. Judges should thus presume that the textual accord adopted by the legislators is the law and must prevail. So when they give us plain meaning, we should honor the people and their legislators with its enforcement and not look for other outcomes based on an intent that never existed.

.The American common law rule on attorneys fees — like much of the common law itself — is now entombed in a world of statutes, which have become the sole source of social-economic ordering. Statutes like this one and the Offer of Judgment statute (§ 768.79) have turned our world into a prevailing party attorneys fees world, whether Judges like it or not.

. I should also point out that even if the statute were actually limited to allowing buyer fees only for successfully defeating the seller's right to payment, there was no error in awarding fees here because buyer defeated seller's claim for the price by showing that the goods failed seller's warranty.