COHEN, J.
David Vega appeals his convictions for possession of cannabis, trafficking in MDMA (commonly known as ecstasy), possession of cocaine, and obstructing a police officer without violence. Vega represented himself at trial. Because the inquiry under Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), was inadequate, we are compelled to reverse for a new trial.
Vega was somehow able to convince a judge to give him six continuances in a case devoid of any real complexity. Initially appointed a public defender, Vega moved to discharge his attorney at a scheduled hearing, not because of competency issues, but because he wanted to hire a private attorney. Vega did not request the right to represent himself. The trial court, rightfully frustrated with the numerous delays in the case, granted the motion, rather than deny or defer ruling until Vega actually hired private counsel. In so doing, the trial court made it clear that no more continuances would be granted: “If your attorney comes in here, Mr. Vega, and says to me, Judge, I’m already set for trial in federal court in Timbuktu on April 20th and I can’t come here for this trial, that’s too bad.”
Apparently dubious as to Vega’s intent or ability to secure counsel, the trial court set a status hearing ten days before the scheduled trial. Because private counsel had not filed a notice of appearance, the trial court informed Vega that if counsel did not appear for trial, he was on his own. Seemingly prescient, the trial court conducted a Faretta inquiry.
The Faretta inquiry, while not particularly lengthy, revealed that Vega read, wrote, and understood English; he attended a technical school before being arrested; and he had never had a mental illness and was in “good mental health.” The trial court briefly explained how a trial was conducted, and that Vega could present evidence, call and cross-examine witnesses. The trial court advised Vega that it would be in his best interest to have an attorney represent him but Vega indicated that he had researched the evidence code while in jail. The trial court found that he had the “mental ability, you have the educational background from a nomlawyer’s — at least from a non-lawyer’s point of view, you are — you are competent to represent yourself in this case if we have to go forward on that basis.” The trial court ended the hearing by informing Vega of his trial date and that jury selection would begin the Monday prior.
Jury selection commenced and Vega did *261 not have counsel.[1] The remainder of the trial was scheduled two days later. After the jury was selected, Vega requested the public defender be reappointed. Vega claimed that he entrusted a third party to hire an attorney for him, but that person instead stole his money, leaving him unable to secure private counsel. The public defender who previously represented Vega informed the trial court that he, personally, could not represent Vega due to other obligations, and did not believe any other public defender could be prepared to give effective assistance on such short notice. Concerned with appointing a public defender who would be required to try the case with only two days’ preparation, the trial court took Vega’s motion under advisement, simultaneously considering it a motion for continuance. After setting forth the facts above, the trial court denied Vega’s motion for reappointment of the public defender.
Vega was tried before a jury and convicted of all four counts. Vega subsequently filed a timely notice of appeal, challenging only the denial of the reappointment of the public defender.
Vega’s attack on the trial court’s Faretta, inquiry can best be characterized as asserting that the trial court did not follow the model colloquy in Amendment to Florida Ride of Criminal Procedure 3.111(d)(2)-(3), 719 So.2d 873 (Fla.1998). Specifically, Vega asserts the Faretta inquiry was inadequate because he was not informed of the potential sentence he could face, was not informed of the potential limitations in legal resources, was not informed that he would have to abide by the relevant rules of procedure and evidence, and was not told that his access to the state attorney would be reduced compared to an attorney.
The State argues that a Faretta inquiry did not need to be conducted because Vega continuously asserted that he was going to retain a private attorney and never unequivocally indicated that he wanted to represent himself, quoting Blake v. State, 972 So.2d 839, 846 (Fla.2007). As a result, the State asserts the trial court could only have abused its discretion in refusing to reappoint the public defender and grant a continuance if Vega could not proceed pro se. Because Vega had conducted some legal research, had some college education, and knew it was in his best interest to retain an attorney, the State concludes the trial court did not abuse its discretion. This argument was rejected in State v. Young, 626 So.2d 655 (Fla.1993).
In Young, the trial court refused to appoint new counsel and refused to grant an “eleventh-hour” continuance when the defendant refused the services of his third appointed counsel. This resulted in the defendant having to represent himself at trial, with only the aid of stand-by counsel. The supreme court held that while a trial court may “presume that an abuse of the right to assistance of counsel can be interpreted as a request by a defendant to exercise the right of self-representation, a defendant may not be presumed to have waived the separate right of assistance of counsel absent a Faretta inquiry.” Id. at 657. Consequently, and contrary to the State’s assertion, the issue is not whether Vega could proceed pro se, but whether the Faretta inquiry was adequate.
There are no magic words when conducting a Faretta inquiry. See Edenfield v. State, 45 So.3d 26, 30 (Fla. 1st *262 DCA 2010). Accordingly, trial courts are not bound to follow the model Faretta colloquy suggested by the supreme court. Id. Rather, an adequate Faretta inquiry requires ensuring that the defendant knowingly and intelligently waives his right to counsel. See Fla. R. Crim. P. 3.111(d)(2). This requires advising the “defendant of the disadvantages and dangers of self-representation.” Id. Explaining the potential penalty in the event of a conviction is an important factor in emphasizing the dangers of self-representation.[2] However, the failure to inform a defendant of the potential penalties, standing alone, is not necessarily fatal. See Potts v. State, 698 So.2d 315 (Fla. 4th DCA 1997).
The trial court’s Faretta inquiry revealed that Vega was a competent, literate adult with some college education. It also revealed that Vega was unfamiliar with the trial process, but that he had completed some research on the evidence code. Although the trial court advised Vega that it was in his “best interest to have an attorney represent you ... because an attorney knows the procedure and has been trained in the evidence,” it did not inform him of the maximum penalty he faced, or of the pitfalls or dangers that accompany self-representation, or that he would have to abide by the relevant rules of procedure and evidence code. Other than indicating that an attorney is trained in the evidentia-ry and procedural rules, the trial court did not inform Vega of the various advantages of having counsel.
Viewed in its totality, the inquiry can be characterized as ensuring that Vega was competent, literate, and generally explaining the trial process. This is inadequate. A. defendant cannot make an intelligent, knowing waiver of his right to counsel without being informed of the dangers and disadvantages of self-representation. See Faretta, 422 U.S. at 835, 95 S.Ct. 2525; Reeves v. State, 987 So.2d 103 (Fla. 5th DCA 2008); Burton v. State, 596 So.2d 1184 (Fla. 1st DCA 1992).
We acknowledge the plausibility of the State’s suggestion that Vega was attempting to delay the proceedings and abuse the system. Although the trial court indicated a concern that Vega’s numerous continuances were an attempt to delay the proceedings, it did not make any finding to this effect in either its supplemental order denying Vega’s motion to reappoint the public defender, or at the April 13, 2009 hearing. Even if such a finding were made, this still would not excuse the trial court from conducting an adequate Faretta inquiry. See Young, 626 So.2d at 657.
REVERSED and REMANDED FOR NEW TRIAL.
LAWSON, J., concurs.
SAWAYA, J., dissents without opinion.

. The failure to renew the offer of counsel is not raised as an issue on appeal. It is clear that the trial court had reached the end of its patience with Vega and had no intention of reoffering the services of the public defender.

. See Segal v. State, 920 So.2d 1279, 1281 n. 1 (Fla. 4th DCA 2006).