610 So.2d 576 (1992)
Daniel M. TAYLOR, Appellant,
v.
STATE of Florida, Appellee.
No. 91-2303.
District Court of Appeal of Florida, First District.
December 10, 1992.
Rehearing Denied January 12, 1993.
*577 James C. Banks, Special Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Charlie McCoy, Asst. Atty. Gen., Tallahassee, for appellee.
WEBSTER, Judge.
In this direct criminal appeal, appellant seeks review of both his convictions and his sentences. Because we are constrained to reverse appellant's convictions and to remand for a new trial, we find it unnecessary to address those issues directed to the propriety of appellant's sentences.
During appellant's first appearance (in December 1990) following his initial arrest, appellant said that he had already retained a lawyer. Accordingly, no lawyer was appointed. A month later, appellant was arrested on a new charge. Apparently, despite his earlier representation that he had retained a lawyer, none had appeared. Therefore, the public defender was appointed. Although the circumstances are unclear from the record, it appears that, at some point during the ensuing three months, the trial court permitted appellant to represent himself. There is nothing in the record to reflect that that ruling was preceded by the thorough inquiry intended to ensure that a defendant has chosen intelligently required by Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); and Rule 3.111(d), Florida Rules of Criminal Procedure.
At a hearing held in April 1991, which began with appellant representing himself, the trial court told appellant:
I am going to give you that lawyer [referring to the public defender, who was present] and I am going to make his office represent you. You will sit at that table with that lawyer and we will have your trial in this courtroom on the date that I set. Those are the rules that you will follow. You can tell that lawyer who you want to sit on the jury and who you don't want to sit on the jury, but he is going to run the trial and you will make the decisions. He is going to follow because he is trained in the laws of evidence and rules of procedure and that lawyer is going to follow those rules and you can tell him who you want called and when you want him to testify and what questions you want asked and he will do it. He will let you decide who to keep on the jury and who to throw off. You make the decisions and he will run the trial.
On the same day, the trial court entered a written order, in which it found that "[t]he Defendant is not competent to represent himself at trial," and appointed the public defender "through final disposition of this matter."
Immediately before the commencement of trial in June 1991, in response to questions from the trial court, appellant said that he had refused to talk to, or to cooperate with, the public defender. He said that he did not want the public defender to represent him because of "a bad experience" he had had in the past, when he had been represented by the public defender in another circuit. Appellant said that he wanted to represent himself.
The trial court engaged in a brief colloquy with appellant, inquiring as to appellant's age, education, mental condition and orientation as to time and place. It then asked whether "other judges [had] let [appellant] proceed in the past," receiving an affirmative response. (However, there was no inquiry as to the extent of appellant's *578 previous self-representation, or the nature of the cases in which he had allegedly represented himself.) The trial court found appellant to be "alert and intelligent and well able to use [his] thinking process and defend [himself] even though ... totally untrained in the rules of law and procedure and conduct of the trial"; and "competent to proceed and to waive counsel and, therefore, proceed in his own defense." The trial court directed the public defender to sit at the counsel table with appellant, "to answer questions and provide any assistance that [appellant] would want."
Appellant conducted his own defense at trial. The jury returned verdicts finding him guilty of sexual battery, kidnapping, grand theft, escape and unauthorized transmission. He was sentenced, as an habitual offender, to consecutive terms of thirty years for sexual battery; life for kidnapping; fifteen years for grand theft; and thirty years for escape. (Appellant was sentenced to time served for unauthorized transmission, a misdemeanor.)
A person accused of a crime has a constitutional right to self-representation. However, because one who elects self-representation "relinquishes ... many of the traditional benefits associated with the right of counsel," he or she must "be made aware of the dangers and disadvantages of self-representation, so that the record will establish that `he [or she] knows what he [or she] is doing and his [or her] choice is made with eyes open.'" Faretta v. California, 422 U.S. at 835, 95 S.Ct. at 2541 (citation omitted). The trial court did make brief inquiry regarding appellant's age, education and mental condition. However, nowhere in the record does there appear any indication that the trial court ever warned appellant about "the dangers and disadvantages of self-representation" (id.); the seriousness of the charges against him; or the potential sentence he might face if found guilty. Likewise, we are unable to discern from the record that appellant comprehended the significance of his decision, or the magnitude of the task that he would be taking on. On the contrary, appellant's performance during the trial is strong evidence that he did not.
We recognize that appellant's behavior was the principal factor contributing to the predicament in which he found himself; and we sympathize with the understandable sense of frustration that trial judges must endure as a result of such behavior. Nevertheless, we are constrained to hold that the failure to warn appellant about the overwhelming disadvantages of self-representation, the seriousness of the charges against him and the potential sentence he might face if found guilty constituted reversible error. See, e.g., Taylor v. State, 605 So.2d 958 (Fla. 2d DCA 1992) (reversible error not to warn of "the complexity of a jury trial, the dangers of self-representation, and the mandatory minimum sentence" if convicted); Kearse v. State, 605 So.2d 534, 537 (Fla. 1st DCA 1992) (defendant "must be made aware of the dangers and disadvantages of self-representation"); Nelson v. State, 601 So.2d 1251, 1252 (Fla. 2d DCA 1992) (defendant must be made aware of the "disadvantages of self-representation"); Smith v. State, 549 So.2d 1147 (Fla. 3d DCA 1989) (reversible error not to warn defendant of "the pitfalls of acting as his own lawyer" and "the potential sentence he might face if found guilty"); Tucker v. State, 440 So.2d 60, 62 (Fla. 1st DCA 1983), review denied, 447 So.2d 888 (Fla. 1984) (telling defendant "that only a fool represents himself and he would be held to the rules of criminal procedure" inadequate to warn defendant of the dangers of self-representation). Accordingly, we reverse appellant's convictions, and remand to the trial court for a new trial.
REVERSED and REMANDED, with directions.
ALLEN and WOLF, JJ., concur.