WEBSTER, Judge,
dissenting.
I share the majority’s view that appellant’s conduct in the trial court was reprehensible. I also share the majority’s view that the trial judge is to be commended for the patience and dignity with which she responded to appellant’s conduct. However, I am unable to agree that no reversible error occurred. Accordingly, respectfully, I dissent.
As the majority opinion reflects, appellant was initially represented by the public defender’s office. For reasons that are not clear from the record, the public defender was permitted to withdraw, and private counsel was appointed to represent appellant. That attorney requested that appellant be examined to determine whether he was competent to proceed. The psychologists who examined appellant both concluded that he was competent to proceed. However, both noted that appellant had previously been found incompetent, and committed to a mental institution for several months, based upon a diagnosis of paranoid schizophrenia.
Appellant requested that the attorney appointed to represent him be discharged, and that another be appointed, because the attorney was not providing him with satisfactory representation. At the hearing on the motion, appellant expounded at some length on the reasons why he felt that he was not receiving effective assistance from his attorney. After listening to appellant, and to his attorney’s response, the trial judge found that appellant had received competent assistance from counsel, and told appellant that another attorney would not be appointed. The record then reflects the following colloquy between the trial judge and appellant:
THE COURT:.... [Y]ou have a couple of choices here.... If you want to discharge Mr. Sheffield and proceed on your own, then that’s something that I will consider. Is that what you want to do?
THE DEFENDANT: No, I want to discharge Mr. Sheffield and I want me a competent attorney, and I’m going to get me another attorney if I get rid of Sheffield.
THE COURT: Do you want to represent yourself?
THE DEFENDANT: I can’t represent myself. Frank Sheffield is not going to represent me.
[[Image here]]
*757 THE COURT: Then I’m not going to allow you to discharge Mr. Sheffield unless you tell me you want to represent yourself, but I’m not going to appoint a new attorney to represent you.
THE DEFENDANT: What you’re trying to do is make me say to the Court that I find — I just want to represent myself.
THE COURT: That’s what I’m telling you. I’m not trying to get you [to] say that.
[[Image here]]
THE DEFENDANT: ... I want him off my ease. He’s not going to represent me. I don’t care if I rot in jail a thousand years, he’s not going to represent me, and you can’t make him represent me.
THE COURT: You want to represent yourself?
THE DEFENDANT: Just let me represent myself. Just get him off my ease.
THE COURT: You want to represent yourself?
THE DEFENDANT: Yeah, I want to represent myself.
[[Image here]]
THE COURT: How old are you, Mr. Eady?
THE DEFENDANT: I’m 35.
[[Image here]]
THE COURT: How far did you go in school?
[[Image here]]
THE DEFENDANT: I finished school. I’ve got a diploma.
THE COURT: Have you ever gone to law school?
THE DEFENDANT: No.
THE COURT: Do you have any special training in how to represent yourself?
THE DEFENDANT: I would like for you to uphold my civil rights. I’m indigent, and I have a right to have a lawyer and if I don’t want a lawyer I don’t want to have him. So all the rest of that — if I’m not competent to do whatever, I can write you a motion.
THE COURT:.... It’s not the safest thing in the world to go to trial without an attorney. I mean, if my ear breaks down and I am driving down the street and a mechanic comes by and wants to fix it, and I say no, I’ll fix it myself and my car blows up a block later, I have nobody to blame but myself.
You understand what I’m saying? I’m going to suggest that you keep Mr. Sheffield because you don’t have [a] right to have the attorney of your choice. But if you’re telling me that you want to represent yourself, I want to make sure that you’re doing that freely and that you know what you’re doing.
THE DEFENDANT: Yeah, I’m going to represent myself for the courts — before the courts. I want me another lawyer.
THE COURT:.... I’m not giving you another lawyer.
THE DEFENDANT: All right.
THE COURT: Now, if you represent yourself, you understand the Court is not going to be able to help you during your trial. It will be just you, and you have to examine your witnesses and cross examine the witnesses and present opening argument and closing argument. You understand all that?
THE DEFENDANT: Yeah, I understand that.
[[Image here]]
THE COURT: All right. Mr. Eady, I’m not going to grant any further continuances, and you’re going to represent yourself and I’m not going to help you. You understand that, don’t you? And since you don’t have the right to another attorney, I’m going to allow you to represent yourself.
No additional questions were asked of appellant regarding the matter of self-representation.
Florida Rule of Criminal Procedure 3.111(d)(2) states that no waiver of the right to counsel shall be accepted until a “thorough inquiry has been made into ... the accused’s capacity to make an intelligent and understanding waiver”; and rule 3.111(d)(3) requires that, in determining whether the accused possesses the “capacity to make an intelligent and understanding waiver,” the *758 trial court must inquire about such matters as the accused’s “mental condition, age, education, experience [and] the nature or complexity of the case.” This rule was adopted “[t]o implement” the decision in Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). State v. Young, 626 So.2d 655, 656 (Fla.1993). In Faretta, the Court said:
When an accused manages his own defense, he relinquishes ... many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must “knowingly and intelligently” forego those relinquished benefits_ Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that “he knows what he is doing and his choice is made with eyes open.”
422 U.S. at 835, 95 S.Ct. at 2541 (citations omitted).
I am of the opinion that the Faretta inquiry conducted by the trial judge was inadequate. The only questions asked related to appellant’s age and education. The trial judge was also aware of appellant’s mental condition, although she apparently gave no weight to the fact that appellant was suffering from paranoid schizophrenia, and had previously been found to be incompetent. No effort was made to ascertain appellant’s previous contacts with the criminal justice system and, more particularly, his previous experience with felony proceedings. Moreover, other than the rather curious attempt to draw an analogy by reference to the repair of a broken-down car, the trial judge made no effort to warn appellant of the overwhelming dangers of self-representation, the seriousness of the charge against him or the potential sentence he might face if found guilty. See Taylor v. State, 610 So.2d 576 (Fla. 1st DCA 1993), and eases cited therein. I am unable to find in the record any indication that appellant comprehended either the significance of his decision or the magnitude of the task that he would be taking on. Therefore, I conclude that the record does not demonstrate the required “intelligent and understanding waiver” by appellant of his right to counsel.
The fact that, as the majority suggests, appellant may have deliberately pursued such a course, hoping to delay the proceedings or to create error, does not excuse the failure to conduct a proper Faretta inquiry. In State v. Young, 626 So.2d 655 (Fla.1993), the court was presented with precisely that issue. It held that, notwithstanding a deliberate attempt by a defendant “to frustrate and delay the trial” (id. at 656), an intelligent and voluntary waiver of the right to counsel may not be presumed absent a proper Faret-ta inquiry. Moreover, the failure to perform a proper Faretta inquiry constitutes per se reversible error — i.e., it is not subject to a harmless error analysis. Id. at 657.
I am also of the opinion that reversible error occurred when appellant’s trial took place in his absence, and without anyone present to represent him. The trial judge was certainly justified in ordering appellant removed from the courtroom. Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).. However, at that point, appellant’s interests were left completely unrepresented. That could easily have been avoided. In Faretta, the Court said that “the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct,” and that “a State may — even over objection by the accused — appoint a ‘standby counsel’ to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant’s self-representation is necessary.” 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46 (citations omitted). See also Jones v. State, 449 So.2d 253, 257 (Fla.1984) (approving trial court’s decision to appoint standby counsel, over defendant’s objection, who might “represent defendant in the event it became necessary to restrict or terminate self-representation by shackling and gagging defendant or by removing him from the courtroom”). Had the trial judge availed herself of one of these options when it became apparent, prior to trial, that appellant was not going to cooper *759 ate in any way, the problem could have been avoided and appellant’s rights preserved. It seems to me that what occurred here violates fundamental concepts of justice in our society and, therefore, requires reversal notwithstanding appellant’s obstructive conduct.