No. 68,575

CITY OF WICHITA, KANSAS, a municipal corporation, *Appellant,*
v. ELIZABETH TILSON, *Appellee.*

(855 P.2d 911)

Opinion filed June 28, 1993.

*Sharon L. Chalker,* assistant city attorney, argued the cause and *Gary E. Rebenstorf,* city attorney, was with her on the briefs for appellant.

*Steven W. Graber,* of Hutchinson, argued the cause and was on the brief for appellee.

*Louise Melling,* of Reproductive Freedom Project, American Civil Liberties Foundation, of New York, New York, and *Jim Lawing,* of Wichita, were on the brief for *amici curiae* American Civil Liberties Union, *et al.*

*Richard D. Cimino,* and *Raphael F. Hanley,* of St. Marys, were on the brief for *amicus curiae* Right to Life of Kansas, Inc.

*John E. Cowles,* of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, was on the brief for *amicus curiae* Women's Health Care Services, P.A.

*Per Curiam:* The City of Wichita appeals from the trial court's ruling that the justification by necessity defense absolved the defendant, Elizabeth A. Tilson, of criminal liability for her actions in trespassing on property owned by the Wichita Family Planning Clinic, Inc., (Clinic) on August 3, 1991. This appeal is taken pursuant to K.S.A. 22-3602(b)(3) on a question reserved by the City. We sustain the appeal.

The facts are not seriously disputed. On August 3, 1991, Elizabeth A. Tilson was arrested for trespassing on property of the Clinic located at 3013 East Central in Wichita, Kansas. The Clinic does not deny that it provides abortion services to some of its patients. Ms. Tilson and others were gathered at both entrances of the Clinic attempting to stop patrons from entering the Clinic. Ms. Deborah Riggs, administrator of the Clinic, asked the individuals to leave the premises. The protesters failed to respond to the request. Ms. Riggs then called Captain William Watson of the Wichita Police Department to the scene. Ms. Riggs asked Captain Watson to request the individuals to leave the Clinic premises. The protesters made no response to his command.

Ms. Tilson was subsequently arrested by Officer Gary Smith for criminal trespass in violation of Section 5.66.050(a) (1992) of the Code of the City of Wichita which provides in part:

"Criminal trespass is entering or remaining upon or in any land, structure, vehicle, aircraft or watercraft by a person who knows he/she is not authorized or privileged to do so, and:

"(a) Such person enters or remains therein in defiance of an order not to enter or to leave such premises [or] property personally communicated to such person by the owner thereof or other authorized person;

. . . .

"Any person who commits a criminal trespass within the corporate limits of the city of Wichita shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than one thousand

dollars or imprisonment which shall not exceed six months, or by both such fine and imprisonment. (Ord. No. 39-765, § 1)."

On November 13, 1991, the defendant was found guilty in Wichita Municipal Court of criminal trespass in violation of the city ordinance. The court ordered her to pay a $1,000 fine, serve six months in the Sedgwick County Adult Detention Facility, and pay all court costs. On the same date, the defendant appealed her conviction to the Sedgwick County District Court.

On January 14, 1992, the district court held a pretrial conference to determine if the court would hear evidence on the issue of when human life begins. At the hearing, the defendant noted that she would be asking the court to make the determination when life begins and at what point in time life has constitutional protection. The trial court found that evidence of when life begins was relevant and would be admitted. On January 21, 1992, the court ruled that it would allow the defendant to present evidence on any common-law defense, including the defense of necessity.

At trial, the defendant admitted that she blocked the entrance to the Clinic but asserted that her actions were excused by the necessity defense. Specifically, she claimed her actions were justified because "abortion takes the life of an unborn baby, and I wanted to prevent that, and I wanted to prevent the detrimental effect that happens to the woman, the father of the baby, the grandparents and brothers and sisters involved." There was no evidence introduced, and no claim has been made by the defendant, that the abortions performed by the Clinic were illegal or that the Clinic was operating in any illegal manner. Defendant in her brief, as she did before this court, takes great umbrage with being referred to as a "protester" and instead portrays herself as being on a "rescue" mission. By whatever name or designation she chooses to be known, it is admitted that she violated the criminal code of the City of Wichita.

On July 20, 1992, following a three-day bench trial, Judge Paul Clark held that the defendant had violated § 5.66.050(a) of the Code of the City of Wichita. He further held, however, that the defendant was absolved of any criminal liability for her actions, based upon the necessity defense. Judge Clark, in a 25-page memorandum opinion, held that the doctrine of justification by necessity was recognized under Kansas law. He additionally held

that the doctrine was applicable to the defendant's actions and justified her trespassing upon the Clinic property for the purpose of saving a human life. At trial, over the objections of the City, the defendant was allowed to introduce expert testimony on the question of when life begins. The City did not attempt to controvert such evidence but instead took the position that the evidence was inadmissible because it was irrelevant to the issues before the court and that the necessity defense did not apply to the charges in this case.

Pursuant to K.S.A. 22-3602(b)(3), the City of Wichita timely appeals from the trial court's holding that the necessity defense was applicable to the defendant's act of criminal trespass on the property of the Clinic.

The issues as stated by the City in its docketing statement read:

"1. Did the District Court err in holding that the necessity defense was recognized by Kansas law on August 3, 1991?

"2. Did the District Court err in concluding that the necessity defense was applicable to the facts of this case thereby discharging the Defendant from criminal liability for her actions in violating Section 5.66.050(a) of the Code of the City of Wichita?"

The City contends that the trial court erred in concluding that the necessity defense was recognized by Kansas law and applied to defendant's criminal acts of trespass. These issues are questions of law subject to broad appellate review. *State, ex rel., v. Doolin & Shaw,* 209 Kan. 244, 261, 497 P.2d 138 (1972).

Before turning to the specific issues on appeal, some background on the necessity defense is deemed advisable. Necessity is a common-law defense recognized in some jurisdictions, while in others it has been adopted by statute. Several states which have no statute on the defense have not determined whether the common-law defense will be recognized. It has been referred to by various terms, including "justification," "choice of evils," or "competing harms." Depending upon the jurisdiction, various elements must be proven in order for a defendant to establish the defense. Section 3.02 of the Model Penal Code, adopted by a number of states and relied upon by the City, provides one formulation of the necessity defense:

"(1) Conduct that the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable, provided that:

(a) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged; and

(b) neither the Code nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and

(c) a legislative purpose to exclude the justification claimed does not otherwise plainly appear." Model Penal Code § 3.02 (1962), 10 U.L.A. 477 (1962).

In his treatise on criminal law defenses, Professor Robinson explains the necessity defense another way:

"The lesser evils defense, sometimes called 'choice of evils' or 'necessity' or the general justification defense, is recognized in about one-half of American jurisdictions. It is perhaps the best illustration of the structure and operation of justification defenses generally. It explicitly relies upon the rationale inherent in all justifications: while the defendant may have caused the harm or evil contemplated by an offense, given the justifying circumstances, he has not caused a net harm or evil and is therefore to be exculpated. The principle of this general justification defense may be stated as follows:

"Lesser Evils. *Conduct constituting an offense is justified if:*

"(1) *any legally-protected interest is unjustifiably threatened, or an opportunity to further such an interest is presented; and*

"(2) *the actor engages in conduct, constituting the offense,*

(a) *when and to the extent necessary to protect or further the interest,*

(b) *that avoids a harm or evil or furthers a legal interest greater than the harm or evil caused by actor's conduct.*" (Italics in original.) 2 Robinson, Criminal Law Defenses § 124(a) pp. 45-46 (1984).

Necessity is generally considered to be an affirmative defense that must be proved by the defendant, usually beyond a reasonable doubt. *State v. O'Brien,* 784 S.W.2d 187, 189 (Mo. App. 1989). Also, "[t]he burden of production for the defense of lesser evils (choice of evils, necessity) is always on the defendant." 2 Robinson, Criminal Law Defenses § 124(a), p. 47. However, some jurisdictions treat the defense as an "ordinary" defense that must be disproved by the prosecution beyond a reasonable doubt. See, *e.g., Commonwealth v. Brugmann,* 13 Mass. App. 373, 379, 433 N.E.2d 457 (1982).

Regardless of what name is attached to the defense (and for the sake of simplicity we will refer to it as the necessity defense) one thing is clear: The harm or evil which a defendant, who

asserts the necessity defense, seeks to prevent must be a legal harm or evil as opposed to a moral or ethical belief of the individual defendant.

The City contends that there is no judicial decision in Kansas which expressly recognizes the necessity defense. It notes that the trial court relied upon *State v. Taylor*, 138 Kan. 407, 26 P.2d 598 (1933), for its determination that the defense was recognized under Kansas law. The City, however, correctly points out that the defense of necessity was not an issue in *Taylor*, nor did the case set forth the elements of such a defense.

In *Taylor*, the defendant was charged with shooting his estranged wife and her brother. The defendant attempted to remove one of his children from the home of his brother-in-law. The defendant alleged that he acted in self-defense in shooting his brother-in-law. *Taylor*, however, does not mention or recognize the necessity defense. The passage from *Taylor* relied upon by the trial court in its memorandum opinion has no bearing upon the defense of necessity. *Taylor* does not support the trial court's holding that the necessity defense is recognized under Kansas law.

The City then observes that the only reported case in Kansas which discusses but failed to recognize the necessity defense is *State v. Greene*, 5 Kan. App. 2d 698, 623 P.2d 933 (1981). In *Greene* the defendants, protesters at the Wolf Creek nuclear power plant, asserted that the compulsion defense set forth in K.S.A. 21-3209(1) relieved them of criminal liability. The Kansas Court of Appeals held that the defendants were not entitled to an instruction regarding the compulsion defense because the defense did not apply to acts which the legislature had expressly concluded not to be criminal. In *Greene* the issue involved the applicability of the statutory compulsion defense which may be related to or synonomous with the necessity defense in some jurisdictions and/or under certain circumstances. In considering the compulsion defense as it applied to activities of the defendants, who were opposed to nuclear power, at the Wolf Creek nuclear power plant, the court did discuss several cases wherein the defense had been asserted at nuclear power plants, but it did not recognize the necessity defense as viable in Kansas. In fact, the defendant conceded in her brief, "*State v. Greene*, 5

Kan. App. 2d 698, 623 P.2d 933 (1981), does not apply. It does not address the justification defense." Additionally, *amicus curiae* Right to Life of Kansas, Inc., asserts in its brief, "We concur with the Appellant's statement that Kansas has never expressly adopted or recognized the necessity defense." Our own research confirms that the parties and *amicus* are correct and that the necessity defense, except as codified in statutes such as those relating to self-defense and compulsion, has not been adopted or recognized in Kansas. Nor do we find it necessary in the resolution of this appeal to make such a determination. Whether the necessity defense should be adopted or recognized in Kansas may best be left for another day.

The issue before us is simply whether the necessity defense, if it were recognized, even applies at all in a case such as this one. Although we decline to specifically determine whether the necessity defense should be adopted or recognized in Kansas, to decide the issue before us it is necessary to consider the issue in light of the necessity defense and its applicability to the charges in this case.

It is established, beyond any argument, that since 1973 a woman has an unfettered constitutional right to an abortion during the first trimester of pregnancy and a somewhat more restricted right to abortion thereafter. *Roe v. Wade*, 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705 (1973). In that case the Supreme Court held:

"(a) For the stage prior to approximately the end of the first trimester, the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman's attending physician.

"(b) For the stage subsequent to approximately the end of the first trimester, the State, in promoting its interest in the health of the mother, may, if it chooses, regulate the abortion procedure in ways that are reasonably related to maternal health.

"(c) For the stage subsequent to viability, the State in promoting its interest in the potentiality of human life may, if it chooses, regulate, and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother." *Roe v. Wade*, 410 U.S. at 164-65.

The City maintains that because no legal harm is caused by an abortion, "the harm caused by the defendant's criminal acts exceeds the harm sought to be prevented by the City's ordi-

nance." The City notes that defendants in several jurisdictions have raised the necessity defense in situations involving trespass or public protest, including those against abortions, and that the "overwhelming majority of jurisdictions have rejected the defense."

Numerous courts have considered whether the necessity defense applies to abortion trespass cases. See Annot., "Choice of Evils," Necessity, Duress, or Similar Defense to State or Local Criminal Charges Based on Acts of Public Protest, 3 A.L.R.5th 521.

Every appellate court to date which has considered the issue has held that abortion clinic protesters, or "rescuers" as they prefer to be called, are precluded, as a matter of law, from raising a necessity defense when charged with trespass. See *Allison v. City of Birmingham,* 580 So. 2d 1377 (Ala. Crim. App. 1991), *cert. denied* 580 So. 2d 1390 (Ala. 1991); *Cleveland v. Municipality of Anchorage,* 631 P.2d 1073 (Alaska 1981); *Pursley v. State,* 21 Ark. App. 107, 730 S.W.2d 250 (1987), *rev. refused* July 22, 1987; *People v. Garziano,* 230 Cal. App. 3d 241, 281 Cal. Rptr. 307, *rev. denied* August 1, 1991, *cert. denied* 116 L. Ed. 2d 750 (1991); *State v. Clarke,* 24 Conn. App. 541, 590 A.2d 468, *cert. denied* 219 Conn. 910 (1991); *Gaetano v. United States,* 406 A.2d 1291 (D.C. 1979); *Hoover v. State,* 198 Ga. App. 481, 402 S.E.2d 92 (1991); *People v. Krizka,* 92 Ill. App. 3d 288, 416 N.E.2d 36 (1980); *Sigma Repro. Health Cen. v. State,* 297 Md. 660, 467 A.2d 483 (1983); *State v. O'Brien,* 784 S.W.2d 187 (Mo. App. 1989); *State v. Cozzens,* 241 Neb. 565, 490 N.W.2d 184 (1992); *People v. Crowley,* 142 Misc. 2d 663, 538 N.Y.S.2d 146 (1989); *State v. Thomas,* 103 N.C. App. 264, 405 S.E.2d 214, *cert. denied* 329 N.C. 792 (1991); *State v. Sahr,* 470 N.W.2d 185 (N.D. 1991); *Kettering v. Berry,* 57 Ohio App. 3d 66, 567 N.E.2d 316 (1990); *State v. Clowes,* 310 Or. 686, 801 P.2d 789 (1990); *Com. v. Wall,* 372 Pa. Super. 534, 539 A.2d 1325, *appeal denied* 521 Pa. 604 (1988); *State v. Morton,* 1991 W L 80204 (Tenn. Cr. App.) (unpublished op.), *appeal denied* (1991); *Crabb v. State,* 754 S.W.2d 742 (Tex App. 1988), *cert. denied* 493 U.S. 815 (1989); *Buckley v. City of Falls Church,* 7 Va. App. 32, 371 S.E.2d 827 (1988).

The only reported case which we have found that recognized the necessity defense in an abortion clinic/trespass case is a Rochester, New York, city court case. *People v. Archer,* 143 Misc. 2d 390, 537 N.Y.S. 2d 726 (1988). The decision in *Archer* was limited to late-term abortions, and in its opinion the court recognized that "*Roe* prohibits the State statutory necessity defense whenever there are intentional interruptions which interfere with the performance of first trimester abortions." 143 Misc. 2d at 403. *Archer* is not persuasive on any issue before this court and is inapplicable to the facts here.

The courts have invoked several different rationales in rejecting application of the defense. The majority of courts reason that because abortion is a lawful, constitutionally protected act, it is not a legally recognized harm which can justify illegal conduct.

In *State v. O'Brien,* 784 S.W.2d 187 (Mo. App. 1989), the defendant was charged with trespass at an abortion clinic and, as in our case, asserted the necessity defense, contending she was on a rescue mission to save and protect unborn children. She attempted, as defendant did here, to introduce evidence of when life begins in support of her defense. The Missouri court stated:

"Since abortion remains a constitutionally protected right, the defense of necessity must be viewed in that context.

"Viewed in that setting every court which has considered the defense of necessity has for various reasons, rejected it when asserted in trespass-abortion proceedings. . . .

"In short, the defense of necessity asserted here cannot be utilized when the harm sought to be avoided (abortion) remains a constitutionally protected activity and the harm incurred (trespass) is in violation of the law." 784 S.W.2d at 192.

Another court has reasoned:

"Through judicial decision and legislative determination denying abortion recognition as a harm, the law has preempted the central inquiry of the necessity defense: whether the activity sought to be stopped or the criminal conduct employed to stop it is the 'greater harm.' By denying abortion classification as a harm the law has determined that the greater harm *per se* is in the criminal conduct. The defense of necessity which has been created by the law may not, therefore, be employed to justify or excuse it." *Kettering v. Berry,* 57 Ohio App. 3d at 68-69.

In *Com. v. Markum,* 373 Pa. Super. 341, 541 A.2d 347, *appeal denied* 520 Pa. 615 *cert. denied* 489 U.S. 1080 (1988), the defendants were convicted of criminal trespass. They alleged that the crimes were justified to prevent the loss of a human life. The court held that the necessity defense was unavailable because a woman's right to obtain an abortion was protected by the United States Constitution. The court stated:

"As we have noted, pre-viability abortion is lawful by virtue of state statute and federal constitutional law. The United States Supreme Court, from *Roe* through its progeny, has consistently held that the state's interest in protecting fetal life does not become compelling, and cannot infringe on a woman's right to choose abortion, until the fetus is viable. *Roe* at 163-64, 93 S. Ct. at 732. Appellants do not suggest that viability and conception are simultaneous ocurrences. We find that a legally sanctioned activity cannot be termed a public disaster." *Com. v. Markum,* 373 Pa. Super at 349.

In *People v. Krizka,* 92 Ill. App. 3d 288, the defendants were charged with trespass on medical center property to prevent abortion. The defendants asserted the necessity defense based upon their contention that life begins at conception and that they were attempting to save lives. The court stated:

"Defendants here contend that they had to commit the acts of criminal trespass in order to prevent the deaths of fetuses, which they perceived as the greater injury. We disagree with defendants' contention because the 'injury' prevented by the acts of criminal trespass is not a legally recognized injury." 92 Ill. App. 3d at 290.

After briefly discussing *Roe* and its progeny, the court continued:

"We therefore conclude that defendants did not engage in illegal conduct because they were faced with a choice of evils. Rather, they intentionally trespassed on complainant's property in order to interfere with the rights of others. . . . Under *Roe,* an abortion during the first trimester of pregnancy is not a legally recognizable injury, and therefore, defendants' trespass was not justified by reason of necessity.

"Defendants attempt to circumvent the effect of *Roe* and to bolster their defense of necessity by arguing that they reasonably believed that they acted to prevent the destruction of human life. They point to language in *Roe* in which the court declined to speculate on when human life begins. [Citation omitted.] Defendants argue that life begins at the time of conception, and that they were denied due process of law because the trial court refused to admit evidence which was proffered to support this contention.

"True, in *Roe,* the court acknowledged the existence of competing views regarding the point at which life begins. However, the Court declined to

adopt the position that life beings at conception, giving recognition instead to the right of a woman to make her own abortion decision during the first trimester. [Citation omitted.] We do not believe that the Court in *Roe* intended courts to make a case-by-case judicial determination of when life begins. We therefore reject defendants' argument." 92 Ill. App. 3d at 290-91.

In *State v. Sahr*, 470 N.W.2d 185 (N.D. 1991), the court was faced with an abortion-trespass case in which the defense was, again, the same as that asserted by the defendant in the present case. The defendants in *Sahr* asserted the necessity defense based upon their beliefs that life begins at conception and their actions were justified to save innocent human lives. The court discussed at some length the necessity defense and, having done so, stated:

"As a result, we conclude that we need not determine the precise scope of the necessity defense available in this state. In our view, the defendants' criminal trespasses at medical clinics to prevent legal abortions may not be justified under any reasonable formulation of the necessity defense.

"The evil, harm, or injury sought to be avoided, or the interest sought to be promoted, by the commission of a crime must be legally cognizable to be justified as necessity. '[I]n most cases of civil disobedience a lesser evils defense will be barred. This is because as long as the laws or policies being protested have been lawfully adopted, they are conclusive evidence of the community's view on the issue.' 2 P. Robinson, *Criminal Law Defenses* § 124(d)(1), at 52. Abortion in the first trimester of pregnancy is not a legally recognized harm, and, therefore, prevention of abortion is not a legally recognized interest to promote.

. . . .

"The element of a legally cognizable injury for the necessity defense has been identified repeatedly in decisions on other criminal attempts to protest abortions at medical clinics. . . . In sum, a claim of necessity cannot be used to justify a crime that simply interferes with another person's right to lawful activity." 470 N.W.2d at 191-192.

Finally, in *Com. v. Wall*, 372 Pa. Super. 534, the court was faced with the same arguments and after reviewing the necessity defense the court held the necessity defense did not apply in an abortion-trespass setting. The court found that the defendants had failed to establish any of the requirements to justify a necessity defense. Having done so, the court went on to state:

"Despite the above [the appellant's inability to satisfy any of the elements of the necessity defense], appellant nevertheless insists that he was justified in violating the law in this case because his actions were motivated by higher principles. To accept appellant's argument would be tantamount to judicially

sanctioning vigilantism. If every person were to act upon his or her personal beliefs in this manner, and we were to sanction the act, the result would be utter chaos. In a society of laws and not of individuals, we cannot allow each individual to determine, based upon his or her personal beliefs, whether another person may exercise her constitutional rights and then allow that individual to assert the defense of justification to escape criminal liability. We recognize that, despite our proscription, some individuals, because of firmly held and honestly believed convictions, will feel compelled to break the law. If they choose to do so, however, they must be prepared to face the consequences. Thus, such private attempts to circumvent the law with the aim to deprive a pregnant woman of her right to obtain an abortion will not be tolerated by this Court. Accordingly, for the reasons set forth above, we conclude that the trial court properly determined that appellant was not entitled to raise the justification defense." 372 Pa. Super. at 543-44.

We concur with the statements of the Pennsylvania court and others cited herein. To allow the personal, ethical, moral, or religious beliefs of a person, no matter how sincere or well-intended, as a justification for criminal activity aimed at preventing a law-abiding citizen from exercising her legal and constitutional rights would not only lead to chaos but would be tantamount to sanctioning anarchy.

Defendant argues that as she had expert medical testimony that life begins at conception, the necessity defense must be allowed. We do not agree. When the objective sought is to prevent by criminal activity a lawful, constitutional right, the defense of necessity is inapplicable, and evidence of when life begins is irrelevant and should not have been admitted.

While we could review the myriad of other cases on the specific issue before us, nothing would be gained by doing so. As stated earlier, all of the appellate court decisions hold that the necessity defense is not applicable in abortion-trespass criminal prosecutions. We again point out that our opinion should not be construed as an indication that we recognize or adopt the necessity defense as the law in Kansas. We make no such determination here. Defendant has wholly failed to demonstrate that the necessity defense would apply to this case even if the defense was recognized.

The appeal is sustained.