Per Curiam:
Scott P. Roeder appeals from the district court's decision to summarily dismiss his motion attacking sentence, which the district court construed as a request for postconviction relief under K.S.A. 2018 Supp. 60-1507. Roeder also appeals from the district court's decision to dismiss his emergency motion to protect unborn individuals. For the reasons stated below, we affirm both of the district court's decisions.
FACTUAL AND PROCEDURAL BACKGROUND
A jury convicted Roeder of one count of premeditated first-degree murder after Roeder fatally shot Dr. George Tiller during a church service in an effort to prevent the doctor from performing further abortions. The jury also convicted Roeder of two counts of aggravated assault based on evidence that, while he was fleeing the scene after the shooting, Roeder threatened to shoot two men who pursued him into the parking lot. Roeder's convictions were affirmed by the Kansas Supreme Court. Roeder subsequently filed a motion attacking his sentence, which the district court construed as a motion for postconviction relief under K.S.A. 2018 Supp. 60-1507. In his motion, Roeder claimed (1) he was the victim of a pattern of deliberate legal indifference, (2) he was denied the twin rights of being present at all critical stages of a criminal prosecution and being free to retain counsel of choice, (3) he was denied effective assistance of counsel during the original proceedings in the district court, and (4) he was denied effective assistance of counsel on direct appeal.
Roeder later filed under the same case number an emergency motion for a stay of execution of all unborn and partially born individuals.
The district court summarily dismissed the 1507 motion, finding Roeder's allegations either were unsupported by existing law, were merely conclusory allegations, or should have been made on direct appeal. The court dismissed the emergency motion for stay of execution, finding that Roeder lacked standing and that filing an ancillary proceeding to protect the rights of unborn or partially born individuals within a 1507 motion constituted an abuse of process.
Roeder moved to alter or amend the court's ruling. After reviewing the briefs submitted by Roeder, the court declined to alter or amend its ruling based on a finding that Roeder
"did not state any particular facts that would show that counsel's performance fell below an objective standard of [ ]reasonableness and that the performance prejudiced the petitioner. Petitioner merely advanced legal arguments or theories that he claims trial counsel or appellate counsel should have argued on appeal. Many of the legal positions or theories advocated by the Petitioner are not supported by current law or would not have been admissible at the time of the petitioner's trial."
The court also reaffirmed its dismissal of Roeder's emergency motion.
STANDARD OF PROOF
The law surrounding K.S.A. 2018 Supp. 60-1507 motions is well-established. A district court has three options when handling a 1507 motion:
" '(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citation omitted.]" Sola-Morales v. State , 300 Kan. 875, 881, 335 P.3d 1162 (2014).
To avoid the summary denial of a motion brought under K.S.A. 2018 Supp. 60-1507, a movant bears the burden of establishing entitlement to an evidentiary hearing. To meet this burden, a movant's contentions must be more than conclusory, and either the movant must set forth an evidentiary basis to support those contentions or the basis must be evident from the record. If such a showing is made, the court must hold a hearing unless the motion is a "second" or "successive" motion seeking similar relief. Sola-Morales , 300 Kan. at 881. Here, the district court exercised the first option and summarily dismissed the motion.
STANDARD OF REVIEW
When the district court summarily denies a K.S.A. 2018 Supp. 60-1507 motion, an appellate court conducts de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant has no right to relief. Sola-Morales , 300 Kan. at 881.
ANALYSIS
On appeal, Roeder raises the following five issues for our review: (1) His statutory and constitutional rights were violated because he was not present in person and did not have counsel at his first appearance; (2) his trial counsel was ineffective for failing to call a coroner as a witness to prove that abortion was a legal harm or evil; (3) his appellate counsel was ineffective for failing to ask the Kansas Supreme Court to adopt the definition of "imminence" as set forth in a 2010 U.S. Justice Department memorandum; (4) his appellate counsel was ineffective for failing to effectively answer certain questions during oral argument; and (5) the district court erred by dismissing his emergency motion to protect unborn individuals as an abuse of process.
The five issues identified above are derived from the appellate brief submitted by Roeder's attorney as well as from Roeder's pro se appellate brief. The issues are not necessarily in the same order presented in those briefs. Although Roeder raised more than five issues in the K.S.A. 2018 Supp. 60-1507 motion he originally filed with the district court, he failed to brief some of those issues on appeal; thus, we deem them abandoned. See State v. Arnett , 307 Kan. 648, 650, 413 P.3d 787 (2018) (holding issues not adequately briefed are waived or abandoned). Roeder also raises a new issue for the first time on appeal. As a general rule, issues not raised before the trial court cannot be raised on appeal. See State v. Kelly , 298 Kan. 965, 971, 318 P.3d 987 (2014). Roeder does not argue any of the recognized exceptions to this rule. Therefore, we will not address the new issue.
1. First appearance
In the motion for relief he filed with the district court, Roeder claimed his convictions must be vacated because, at his first court appearance after arrest, he was deprived of the right to be personally present and the freedom to retain counsel of choice:
"At my so called first appearance before a magistrate, while being bound over for a felony, I was made to appear by way of two-way electronic audio-video communication without the assistance of counsel and without being informed of my right to be personally present in the courtroom, and at which time my substantial constitutional right to bail was denied, all of which was broadcast on television while I was in jail clothes. Though counsel was later appointed and moved the court to set bail, counsel was ineffective who addressed neither the deliberate indifference which was shown to me in denying my twin rights before a televised audience nor its fatal effect upon the state's case which is the logical effect of deliberate indifference to the twin rights at first appearance."
We begin by noting that, contrary to his assertion, Roeder was not bound over on felony charges at his first court appearance on June 2, 2009. The proceeding in which Roeder was bound over on the felony charges lodged against him was the preliminary hearing, which was held on July 28, 2009. The journal entry and transcript from the preliminary hearing reflect Roeder was present in person and through counsel, Charles Osburn. The journal entry and transcript also reflect that, after hearing evidence at the hearing, the district court found probable cause to believe (1) that the offenses of first-degree murder and aggravated assault had been committed and (2) that Roeder was the individual who committed those offenses. See In re D.E.R. , 290 Kan. 306, 312-14, 225 P.3d 1187 (2010) (purpose of statutory preliminary hearing is to determine whether crime has been committed and whether there is probable cause to believe that defendant committed it). Based on the court's finding of probable cause, Roeder was bound over for trial. See K.S.A. 2018 Supp. 22-2902(3) ("If from the evidence it appears that a felony has been committed and there is probable cause to believe that a felony has been committed by the defendant, the magistrate shall order the defendant bound over to the district judge having jurisdiction to try the case; otherwise, the magistrate shall discharge the defendant.").
Unlike a preliminary hearing, the Kansas statute governing first court appearances provides, in relevant part:
"(1) Except as provided in subsection (7), when an arrest is made in the county where the crime charged is alleged to have been committed, the person arrested shall be taken without unnecessary delay before a magistrate of the court from which the warrant was issued. If the arrest has been made on probable cause, without a warrant, he [or she] shall be taken without unnecessary delay before the nearest available magistrate and a complaint shall be filed forthwith." K.S.A. 2018 Supp. 22-2901(1).
The purpose of the rule requiring a person to be taken before a magistrate without unnecessary delay after an arrest is to safeguard individual rights. State v. Wakefield , 267 Kan. 116, 124, 977 P.2d 941 (1999). Although law enforcement, as part of the executive branch of government, is charged with the duty to advise arrestees of their statutory and constitutional rights, K.S.A. 2018 Supp. 22-2901(1) comports with fundamental principles of due process by requiring that the arrestee be taken without unnecessary delay to an impartial tribunal so a neutral judge can provide the arrestee with notice of the charges filed and the constitutional rights to which the arrestee is entitled. See State v. Crouch & Reeder , 230 Kan. 783, 785-86, 641 P.2d 394 (1982).
Given the record reflects both he and his attorney were present at his preliminary hearing, we now address the merits of Roeder's claims alleging that he was deprived of the right to be personally present and the freedom to retain counsel of choice at his first court appearance. We address each of these claims in turn.
a. Right to be present
Whether a trial court violated a defendant's constitutional or statutory right to be present at every critical stage of his or her criminal trial is an issue of law over which an appellate court exercises unlimited review. State v. Verser , 299 Kan. 776, 787, 326 P.3d 1046 (2014).
A defendant has both a constitutional and a statutory right to be present at all critical stages of prosecution. The constitutional right " 'emanates from the Sixth Amendment right to confront witnesses and from the right to due process guaranteed under the Fifth and Fourteenth Amendments.' " State v. Lowery , 308 Kan. 1183, 1213, 427 P.3d 865 (2018). The statutory right is set forth in K.S.A. 2018 Supp. 22-3405, a section of the criminal code of procedure in Kansas governing the presence of the defendant at trials and proceedings incident to trials. The statute states, in relevant part, that "[t]he defendant in a felony case shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by law." K.S.A. 2018 Supp. 22-3405(a). The effect of this statute has been held by our Supreme Court to be " 'analytically and functionally identical to the requirements under the Confrontation Clause and the Due Process Clause of the federal Constitution that a criminal defendant be present at any critical stage of the proceedings.' " Lowery , 308 Kan. at 1213.
Relevant to the issue presented by Roeder here, the section of the criminal code of procedure in Kansas governing pretrial proceedings provides the manner in which the court can satisfy its duty to ensure a defendant is not deprived of the right to be present when pretrial pleadings and motions come before the court. Specifically, K.S.A. 2018 Supp. 22-3208(7) deems the defendant's participation via audio-video connection to satisfy the right to be present at hearings when pretrial pleadings and motions come before the court so long as the defendant is informed of the defendant's right to be personally present in the courtroom during those proceedings upon request of the defendant.
Roeder made his first court appearance on June 2, 2009. He readily concedes that he was present at the hearing. He takes issue, however, with the fact that the district court failed to inform him during the video hearing of his right to be personally present in the courtroom upon request, as set forth by K.S.A. 2018 Supp. 22-3208(7). Claiming he would have requested a personal appearance in the courtroom had he been told of his right to make such a request, Roeder argues he was prejudiced by the court's failure to advise him of his right. We are not persuaded by Roeder's argument. Significantly, Roeder does not argue, nor are there facts in the record to establish, that Roeder's appearance at the first court hearing by video, as opposed to an in-person appearance, deprived him of any constitutional right, including the right to confront witnesses or his due process right to a fair and just hearing. For this reason, Roeder's constitutional challenge fails.
With regard to his claim that the district court erred by failing to comply with the statute requiring a defendant be advised during a video hearing of the right to be personally present in the courtroom upon request, Roeder has failed to provide any evidence to establish that he was not so informed. The written journal entry documenting Roeder's first appearance on June 2, 2009, does not indicate how Roeder appeared, whether Roeder was informed of this right to appear in person upon request, and, if he was, whether he affirmatively made such a request. Although Roeder attached an uncertified transcript to his appellate brief that purports to document the proceedings at the initial appearance, an official certified transcript of the first appearance is not part of the record on appeal. And even if we could consider the uncertified transcript attached to his brief, that transcript affirmatively indicates that Roeder appeared at the hearing "in person."
In sum, we find the motion, files, and records of the case conclusively establish that Roeder is not entitled to relief on his claim that he was deprived of his constitutional or statutory right to be present at his initial appearance.
b. Right to counsel
Roeder complains the district court violated his Sixth Amendment right to counsel by failing to provide him an attorney at his first appearance, a hearing at which the court determined Roeder should be held without bond. But the Sixth Amendment right to counsel applies only at "critical stages" of the criminal proceeding, and Roeder's first appearance and initial bail hearing was not a critical stage of his criminal proceeding. See Craig v. State , 198 Kan. 39, 41, 422 P.2d 955 (1967) (noting that counsel need not be appointed for initial appearance before judge at which bail is determined); see 3 LaFave, Israel, King, & Kerr, Criminal Procedure § 11.2(b), p. 702 (4th ed. 2015) (noting that while United States Supreme Court left open question of whether first appearance in criminal case is critical stage requiring counsel in Rothgery v. Gillespie County , 554 U.S. 191, 128 S. Ct. 2578, 171 L.Ed. 2d 366 [2008], statements in Court's opinion and concurring opinion suggested that the standard first appearance ordinarily would not be a critical stage).
Even if we construed his first court appearance to be a critical stage of the criminal proceedings against him, Roeder does not allege, nor is there record evidence to establish, that Roeder was prejudiced in any way. The record on appeal establishes that Roeder made his initial court appearance on June 2, 2009, the same day he was charged. The judge read the charges, denied Roeder the right to be released upon payment of an appearance bond, and appointed the public defender's office to defend him. On June 3, 2009-one day after his first court appearance-Roeder's court-appointed counsel filed a motion for an appearance bond. On June 4, 2009, the court set bond at $5 million.
The motion, files, and records of the case conclusively establish that Roeder is not entitled to relief on his claim that he was deprived of his constitutional right to counsel at his initial appearance.
2. Ineffective assistance of counsel
To prevail on a claim of ineffective assistance of counsel, a movant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability of a different result absent the deficient performance. Sola-Morales , 300 Kan. at 882 (relying on Strickland v. Washington , 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed. 2d 674 [1984] ). Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. State v. Butler , 307 Kan. 831, 853, 416 P.3d 116 (2018). The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. State v. Kelly , 298 Kan. 965, 970, 318 P.3d 987 (2014).
a. Trial counsel
Roeder contends that his trial counsel was ineffective for failing to call the coroner as a witness to make a factual determination "whether babies killed by performing an abortion are in fact victims of the legal harm or evil of homicide." Roeder argues this testimony was critical to his necessity and imperfect defense-of-others defenses. He argues that if he showed that abortion was a legal harm or evil, he would have been allowed to assert those defenses and it would have been more likely than not that no reasonable juror would have convicted him of first-degree murder.
Notably, Roeder challenged on direct appeal the district court's decision to deny his request to put on a necessity defense and the court's decision to deny his request to give an instruction on the lesser included offense of voluntary manslaughter based on imperfect defense-of-others. Although now framed in the context of ineffective assistance of counsel, he now raises these same issues.
(i) Necessity defense
Before trial, the trial court ruled that Roeder could not present a necessity defense. As we noted, Roeder challenged that ruling in his direct appeal. In its decision, our Supreme Court declined to state whether a necessity defense could ever be presented in Kansas. Rather, the court held the facts presented in this particular case "unequivocally preclude" applying the necessity defense. State v. Roeder , 300 Kan. 901, 919, 336 P.3d 831 (2014). The court held:
"Regardless of whether Kansas courts can recognize a necessity defense as a matter of common law and regardless of the formulation of the defense that might be adopted, the necessity defense would never be available to a defendant who commits premeditated first-degree murder of a doctor in order to prevent that doctor from performing an abortion sometime in the future, even if the defendant is convinced that the doctor will fail to comply with all the administrative rules and regulations applicable to abortion providers." 300 Kan. 901, Syl. ¶ 3.
Given the manner in which Roeder wanted to avail himself of the necessity defense, the Supreme Court held the defense would be available only if Roeder could establish the following elements: (1) He faced a choice of evils and chose the lesser evil, (2) he acted to prevent imminent harm, (3) he reasonably anticipated a direct causal relationship between his conduct and the harm to be averted, and (4) he had no legal alternatives to violating the law. 300 Kan. at 917.
In holding that the facts presented in this case precluded application of the necessity defense, the Supreme Court characterized the evil Roeder sought to prevent as:
"Dr. Tiller's failure to comply with all of the rules and regulations applicable to abortion providers, i.e. , administrative or procedural irregularities. Roeder wants to argue that the doctor was murdering babies, but that is his religious and moral view, rather than the legal view in this state. As noted above, [ City of Wichita v. ] Tilson [, 253 Kan. 285, 855 P.2d 911 (1993) ] declared that '[t]he harm or evil which a defendant, who asserts the necessity defense, seeks to prevent must be a legal harm or evil as opposed to a moral or ethical belief of the individual defendant.' 253 Kan. at 289-90. Indeed, one need look no further than Dr. Tiller's criminal trial upon which Roeder relies to establish his belief that illegal abortions were occurring at the clinic. The doctor was not charged with murder, but rather that trial was about misdemeanor violations for failing to follow the proper procedure." 300 Kan. at 917-18.
The court ultimately concluded that Roeder did not choose the lesser evil when he killed Dr. Tiller. The court also concluded that Roeder did not act to prevent imminent harm because Dr. Tiller was not going to be performing any abortions at the church. The court found Roeder killed Dr. Tiller at the church because it made the assassination easier to accomplish. The court did not find persuasive Roeder's argument that the possibility of Dr. Tiller performing an abortion 22 hours after the shooting qualified as imminent harm. Finally, the court found Roeder did not sincerely believe the harm was imminent because he waited over a decade to prevent it. 300 Kan. at 918.
Given the Supreme Court's decision affirming the district court's decision to preclude Roeder from asserting a necessity defense, we find his trial counsel was not deficient for failing to call the coroner as a witness to make a factual determination "whether babies killed by performing an abortion are in fact victims of the legal harm or evil of homicide."
(ii) Imperfect defense-of-others
On direct appeal, Roeder also argued the district court erred in denying his request to give an instruction on the lesser included offense of voluntary manslaughter based on imperfect defense-of-others. Relevant here, K.S.A. 21-3403(b) defined voluntary manslaughter based on an imperfect defense-of-others as "the intentional killing of a human being committed ... (b) upon an unreasonable but honest belief that circumstances existed that justified deadly force under K.S.A. 21-3211." The statute referenced in the definition, K.S.A. 21-3211, sets forth the elements necessary to support a perfect defense of third persons.
Roeder argued in his direct appeal that he met the criteria necessary to justify giving a voluntary manslaughter instruction based on imperfect defense-of-others by testifying that he honestly believed killing Dr. Tiller was necessary in order to defend the lives of others. Implicit within Roeder's argument is the notion that an imperfect defense-of-others instruction is proper based solely on a showing of a defendant's subjective and honest belief that deadly force was necessary to protect third persons. Our Supreme Court disagreed, holding that the voluntary manslaughter analysis requires both (1) a finding that the defendant subjectively and honestly believed that circumstances existed to justify deadly force as well as (2) a finding that the circumstances which the defendant honestly believed to exist must have been circumstances that would have supported a perfect defense of third persons under K.S.A. 21-3211. See Roeder , 300 Kan. at 923. The court held that "even if the circumstances that Roeder believed existed had been true-that Dr. Tiller would be performing abortions the following day-those circumstances would not have supported a claim of perfect defense-of-others." 300 Kan. at 926. The court further held that in order for the defense "to apply under K.S.A. 21-3211(a), Roeder had to be defending against Dr. Tiller's 'imminent use of unlawful force' against a third person." 300 Kan. at 926. The court explained:
"As the trial court aptly noted, no use of force was imminent in the church foyer that Sunday morning. Moreover, the facts belie the notion that Roeder committed the crime when and where he did because of an honest belief in the imminence of harm. To the contrary, he coldly calculated the time and place that gave him the best odds of successfully completing his planned murder. Additionally, given that abortions are lawful, Roeder could not have been defending against unlawful force , as required for perfect defense-of-others. Even if the doctor had failed to comply with all of the rules and regulations governing abortions, the use of the force required to accomplish the abortion would not have been unlawful.
"Finally, we would note that Roeder's argument that he honestly believed that Dr. Tiller was performing unlawful abortions based upon the attorney general investigations and allegations that the doctor was violating administrative protocol is simply disingenuous. Roeder testified that he formed the belief that he needed to kill Dr. Tiller over a decade prior to any attorney general investigation. Further, he clearly testified that he sought to stop all abortions, including those that were legal under the law." 300 Kan. at 926.
Again, given the Supreme Court's decision that the district court did not err in denying Roeder's request to give an instruction on the lesser included offense of voluntary manslaughter based on imperfect defense-of-others, we necessarily find his trial counsel was not deficient for failing to call the coroner as a witness to support such an instruction.
b. Appellate counsel
(i) Imminence
Roeder contends that a threat on U.S. persons is "imminent" when an individual " 'is engaged in continual planning and direction of attacks upon U.S. persons' even when one 'does not know precisely when such attacks will occur.' " He purportedly derives this definition from a U.S. Department of Justice memorandum entitled " 'Applicability of Federal Criminal Laws and the Constitution to Contemplated Lethal Operations Against Shaykh Anwar al-Aulaqi' " dated July 16, 2010. Roeder contends under this definition of imminence, as long as Dr. Tiller had abortions on his schedule they were imminent, no matter how far out. He contends that no reasonable juror would have found his belief that harm was imminent unreasonable in view of this definition of imminence. He contends that his appellate counsel was ineffective for conceding that six months out was not imminent.
But there was no support in the law upon which appellate counsel could rely to support Roeder's broad definition of imminence. To make a claim of imperfect defense of another, the defendant must have actually believed that an imminently dangerous situation existed at the time of the killing. State v. White , 284 Kan. 333, Syl. ¶ 10, 161 P.3d 208 (2007).
In White , the court held that, although " 'imminent' describes a broader time frame than immediate, the term 'imminent' is not without limit. The danger must be near at hand." 284 Kan. 333, Syl. ¶ 9. White believed that his grandson had been sexually abused and would be abused in the future. White drove to the Wal-Mart store where the purported abuser worked, and White shot and killed him. The court found no evidence that White actually believed that the grandson was in imminent danger at the time of the shooting because the grandson was not present at the store. Thus a voluntary manslaughter instruction based on imperfect defense of others would have been inappropriate. 284 Kan. at 353. Similarly here, Dr. Tiller's alleged victims were not present at the church where Roeder shot him.
In State v. Hernandez , 253 Kan. 705, 861 P.2d 814 (1993), Hernandez confronted Randy Meis after 9:05 a.m. at their mutual place of employment and asked him outside. Hernandez believed that Randy, who was married to Hernandez' sister Myra Meis, intended to kill Myra at 11 a.m. that day (less than two hours away). Randy had a history of violence toward Myra. But Myra was not present during the confrontation; though Myra worked at the same location and was in the building. During the confrontation, Hernandez shot and killed Randy. The court ruled the danger to Myra was not imminent, and Hernandez had no right to a defense-of-another instruction. 253 Kan. at 712-13.
This underlying issue of imminence was decided aversely to Roeder in his direct appeal. His appellate counsel argued that Roeder believed the danger was imminent because, at the time of the shooting, Dr. Tiller had an abortion scheduled 22 hours later. See Roeder , 300 Kan. at 918. But the Kansas Supreme Court found 22 hours was not imminent. The court thus refused to adopt even his counsel's more narrow definition of imminence. The court considered the danger posed by Dr. Tiller "remote" compared to Hernandez . Roeder , 300 Kan. at 939. And the court found that the facts showed Roeder did not have an honest belief in the imminence of the harm; rather, he waited over a decade and "coldly calculated the time and place that gave him the best odds of successfully completing his planned murder." 300 Kan. at 918, 926.
We find no deficiency in appellate counsel's representation related to the issue of imminence.
(ii) Oral argument
Roeder argues his appellate counsel was ineffective by stating that Roeder believed that only late-term abortions were illegal. Rather, he believed "that any abortion performed by Tiller, being the lethal execution of a baby, was unlawful and that its prevention justified the use of deadly force." But Roeder's position only makes it clear why he was not entitled to an imperfect self-defense instruction as a matter of law. In its opinion, our Supreme Court held that it is a "fundamental notion that everyone is presumed to know the law and one cannot use as a defense his or her subjective belief that the law is or should be something different." (Emphasis added.) Roeder , 300 Kan. at 922. The court held that "given that abortions are lawful, Roeder could not have been defending against unlawful force " as required to claim imperfect self-defense. 300 Kan. at 926.
Roeder also argues that appellate counsel was ineffective for being stumped by certain hypotheticals posed by the justices. But the fact that Roeder may have answered these hypotheticals differently than his appellate counsel does not establish that counsel's representation fell below the broad range of reasonable professional assistance. We find no deficiency in appellate counsel's statements at oral argument.
3. Emergency motion
Roeder contends that he established in his emergency motion the right of unborn and partially born individuals to a stay of execution of sentence of death under Kansas law. The district court ruled that Roeder could not use a K.S.A. 60-1507 proceeding as a vehicle to file ancillary proceedings for unborn or partially born individuals. Roeder responds that the emergency motion was properly within the scope of his K.S.A. 60-1507 proceeding because (1) the legal proof of personhood fell within the scope of what was germane to establishing his own right to an evidentiary hearing on his K.S.A. 60-1507 motion and (2) lives urgently need to be saved from lethal execution under Kansas law.
To decide this issue, it is helpful to understand precisely what K.S.A. 2018 Supp. 60-1507(a) says:
"A prisoner in custody under sentence of a court of general jurisdiction claiming the right to be released upon the ground that the sentence was imposed in violation of the constitution or laws of the United States, or the constitution or laws of the state of Kansas, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may , pursuant to the time limitations imposed by subsection (f), move the court which imposed the sentence to vacate, set aside or correct the sentence ." (Emphases added.)
The statute permits a prisoner to challenge his or her sentence in the court which imposed the sentence, not to challenge anyone else's sentence. It does not matter if the issues involved are similar. As the district court aptly explained,
"The statutory procedure under K.S.A. 60-1507 is an individual remedy for a person allegedly unlawfully held in detention. The request is unique to that individual and any requested relief afforded by the circumstances of that individual's detention. To allow the Petitioner to advocate on behalf of the unborn or partially born individuals, (assuming for the moment that is even a viable legal position) would be tantamount to allowing any prisoner in the State of Kansas to file their individual petition under K.S.A. 60-1507, and then advocate on behalf [of] all prisoners 'similarly situated' for their alleged unlawful detention. Petitioner is not entitled in this instant action to amend and add separate claims on behalf of other individuals, even as 'next friend'. The petitioner's attempt to seek additional relief on behalf of others, beyond his individual claims under K.S.A. 60-1507, is an abuse of process, and would not be recognized as a legal theory under the present case. If Petitioner seeks to advocate on behalf of the partially born or unborn individuals within this Court's venue and jurisdiction, Petitioner should pursue that remedy in a separate action."
Roeder filed a similar petition as an original habeas action under K.S.A. 2018 Supp. 60-1501 in November 2017 under case number 118,601. The Supreme Court dismissed that petition. The district court did not err in dismissing Roeder's emergency motion.
Affirmed.