NOT DESIGNATED FOR PUBLICATION

No. 127,256

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ALONZO D. CHEEKS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE BROWN, judge. Submitted without oral argument. Opinion filed December 12, 2025. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ARNOLD-BURGER and PICKERING, JJ.

PER CURIAM: Alonzo D. Cheeks appeals his conviction for criminal possession of a weapon by a convicted felon, claiming the district court erred when it failed to sua sponte give a jury instruction on the defense of necessity. After review, we find no error by the district court, and we affirm Cheeks' conviction.

FACTUAL AND PROCEDURAL BACKGROUND

Following a disturbance on January 4, 2023, the State charged Cheeks with two counts of criminal possession of a weapon by a convicted felon. In count one, the State identified the weapon as a "Taurus handgun." In count two, the weapon was identified as a "Springfield handgun."

At trial, Wichita Police Officer Jared Henry testified he responded to a disturbance shortly after 1 p.m. on January 4, 2023. Dispatch had advised that the disturbance involved a gun. Henry observed a highly agitated man, later identified as Cheeks, yelling at another individual. Henry ordered Cheeks to his knees and placed him in handcuffs. Henry escorted Cheeks away from the other individual and toward his police car. Henry testified that Officer Michael Tiday had observed a gun in Cheeks' jacket pocket and removed the firearm.

Tiday testified he also responded to the disturbance. He observed the handle of a gun sticking out of a pocket and removed the gun from Cheeks' possession. Tiday testified the gun was "a Judge model handgun" and was loaded. This was the Taurus handgun.

Officer Aric St. Vrain testified he responded with Henry. St. Vrain conducted a pat-down and discovered another firearm in Cheeks' pants pocket. This was the Springfield handgun.

The district court took judicial notice of 2016-CR-2595, in which Cheeks pled guilty to possession of cocaine. The State rested.

Cheeks testified in his own defense. During Cheeks' testimony, the district court made repeated admonitions to remain focused on the events of January 3-4, 2023. Cheeks

testified he owned the property where the disturbance occurred. According to Cheeks, there was a dispute about ownership of the property and he was staying at the property to protect his assets. He told the jury that on the evening of January 3, 2023, a man approached him at the property saying, "[T]hey want you dead." When the man attempted to pull out a gun, Cheeks and his associates "just dismantled him, we got him, got the gun." Cheeks wound up with the gun. After the man left, Cheeks sent his associates away. Cheeks spent the night in the office of the building.

Cheeks testified that on January 4, 2023, a different man tried to evict him from the property. Cheeks instructed his associates to call the police. Cheeks told the jury the man went for the Springfield handgun. Cheeks hit the man with his cane and took the handgun. Cheeks put the gun in his left pocket. Cheeks then kept the man from leaving until law enforcement arrived.

On cross-examination, Cheeks testified he took the Springfield handgun and intended to keep it until he could give it to law enforcement. Cheeks admitted he took the Taurus gun for the same reason but that he kept it with him throughout the night. Cheeks did not call the police after taking the Taurus handgun. Ultimately, Cheeks testified he did not know he was not allowed to possess a gun.

Cheeks did not request a jury instruction on the defense of necessity at the instruction conference.

The jury found Cheeks guilty of count one of criminal possession of a firearm by a convicted felon—the Taurus handgun—but found Cheeks not guilty of count two of possession of a firearm by a convicted felon—the Springfield handgun. The district court denied Cheeks' motion for departure and sentenced Cheeks to 23 months' imprisonment.

Cheeks timely appealed.

ANALYSIS

*Standard of Review*

> "When analyzing jury instructions, appellate courts follow a three-step process: (1) determine whether the appellate court can or should review the issue, in other words, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) consider the merits of the claim to determine whether error occurred below; and (3) assess whether the error requires reversal—in other words, whether the error can be deemed harmless." *State v. Hollins*, 320 Kan. 240, 242, 564 P.3d 778 (2025).

At the second step, appellate courts use an unlimited standard of review in considering whether an instruction was legally and factually appropriate. "In determining whether an instruction was factually appropriate, [appellate courts] must determine whether there was sufficient evidence, viewed in the light most favorable to the requesting party, that would have supported the instruction." *State v. Mendez*, 319 Kan. 718, 727, 559 P.3d 792 (2024).

"Whether a party has preserved a jury instruction issue affects the appellate court's reversibility inquiry at the third step." *State v. Peters*, 319 Kan. 492, 515, 555 P.3d 1134 (2024). When a party fails to object to the giving of or failure to give a jury instruction before the district court, an appellate court reviews the instruction to determine whether it was clearly erroneous. K.S.A. 22-3414(3). An appellate court reviews whether the failure to give an instruction was clearly erroneous de novo. *State v. Williams*, 295 Kan. 506, 516, 286 P.3d 195 (2012).

*We Apply the Clear Error Standard*

Despite acknowledging he did not specifically request a jury instruction on the defenses of necessity or compulsion, Cheeks contends the district court was obligated to

give these instructions sua sponte and cites K.S.A. 21-5108(c) for support. As a result, Cheeks argues we should apply a constitutional harmless error standard when addressing reversibility because the error "implicated his constitutional rights to present a defense and to bodily integrity." Alternatively, Cheeks advocates for a statutory reversibility standard.

A criminal defendant is entitled to a jury instruction on the law applicable to every theory of defense "that is supported by competent evidence. Competent evidence" is defined as evidence that "could allow a rational fact finder to reasonably conclude that the defense applies." K.S.A. 21-5108(c). Long before the codification of K.S.A. 21-5108(c), a criminal defendant was entitled to a jury instruction on his or her theory of defense if the defense was supported by the evidence. See *State v. Gonzales*, 253 Kan. 22, 23, 853 P.2d 644 (1993). Despite this, the Kansas Supreme Court has consistently reviewed the failure to give a jury instruction—even one supporting a theory of defense—for clear error when the defendant failed to request the instruction. See, e.g., *State v. Waldschmidt*, 318 Kan. 633, 646, 546 P.3d 716 (2024). Because Cheeks did not request a jury instruction on necessity or compulsion, he has not preserved this issue, and we therefore review for clear error. See K.S.A. 22-3414(3).

*The Requested Instruction Was Not Factually Appropriate*

A criminal defendant "'is entitled to instructions on the law applicable to [the] defense theory if there is sufficient evidence for a rational factfinder to find for the defendant on that theory.'" *State v. Wimbley*, 313 Kan. 1029, 1034-35, 493 P.3d 951 (2021). But this "does not mean a defendant is entitled to every permissible instruction touching on" that defense theory. 313 Kan. at 1035.

Citing *State v. Hunt*, No. 106,296, 2012 WL 3966535, at *2-4 (Kan. App. 2012) (unpublished opinion), Cheeks asserts the elements of the defense of necessity are:

"'(1) that the defendant was faced with a choice of evils and chose the lesser evil, (2) the defendant acted to prevent imminent harm, (3) the defendant reasonably anticipated a direct causal relationship between his conduct and the harm to be averted, and (4) the defendant had no legal alternatives to violating the law.'"

In *State v. Roeder*, 300 Kan. 901, 917, 336 P.3d 831 (2014), the Kansas Supreme Court accepted Roeder's proffered elements of necessity—which were based on *City of Wichita v. Holick*, No. 95,340, 2007 WL 518988, at *3 (Kan. App. 2007) (unpublished opinion), and identical to the elements identified in *Hunt*—and considered whether the defense was factually appropriate under his proffered elements. Thus, we will consider whether Cheeks' necessity defense is appropriate under his proffered elements.

Here, the State charged Cheeks with two counts of criminal possession of a weapon by a convicted felon. Yet a jury acquitted Cheeks of criminal possession of the Springfield handgun. Accordingly, we need only consider whether a jury instruction on the defense of necessity was factually appropriate for the first charge—the Taurus handgun.

Cheeks' appellate brief accurately sets forth part of his testimony. Cheeks testified that people tried to kill him the night before the disturbance. He told the jury that the man who told Cheeks "they want you dead" went for a gun and "we all—we just dismantled him, we got him, got the gun." Cheeks testified he took the gun in his possession.

On appeal, Cheeks asserts that "[t]he avoidance of great bodily harm or death is a lesser evil than the benign possession of a gun" and that these facts show harm was imminent. He also argues there was a direct causal relationship between taking the Taurus handgun and avoiding someone being shot. Finally, Cheeks contends he had no legal alternatives "at the moment." As a result, Cheeks believes an instruction on the defense of necessity was factually appropriate.

Certainly, *at that moment*, Cheeks may have chosen the lesser of two evils, faced imminent harm, anticipated a causal relationship between his action and averting the harm, and had no other legal alternatives. But Cheeks ignores the rest of his testimony. Cheeks also testified he obtained the Taurus handgun during an incident that occurred the night before his encounter with law enforcement. And the individual he took the Taurus handgun from "went on about his way" after Cheeks and his associates beat up the man. Cheeks admitted he kept the Taurus handgun with him overnight. Cheeks also acknowledged he did not call law enforcement that night and admitted he intended to have control over the Taurus handgun.

As the State suggests, once the imminent danger passed, Cheeks had legal alternatives to *continued* possession of the Taurus handgun. Cheeks could have called law enforcement once he disarmed the individual. Cheeks could have given the Taurus handgun to one of his associates to hold. And Cheeks could have disposed of the handgun or locked it away.

Law enforcement responded to the disturbance a little after 1 p.m. Cheeks had, at minimum, more than seven hours to divest himself of possession of the Taurus handgun after the imminent danger passed. He did not. An instruction on the defense of necessity was not factually appropriate under these circumstances.

*We Need Not Consider Whether a Defense of Necessity Was Legally Appropriate*

The Kansas Supreme Court has repeatedly declined to recognize a necessity defense. See *Roeder*, 300 Kan. at 919 (declining "to definitively state whether the necessity defense has any life in this state under other circumstances" but holding "the facts of this case unequivocally preclude the application of the necessity defense"); *City of Wichita v. Tilson*, 253 Kan. 285, 296, 855 P.2d 911 (1993) (The court emphasized the opinion "should not be construed as an indication that we recognize or adopt the

7

necessity defense as the law in Kansas. . . . Defendant has wholly failed to demonstrate that the necessity defense would apply to this case even if the defense was recognized."). In short, the Kansas Supreme Court has declined every opportunity to address whether the defense of necessity was legally appropriate when the defense was not factually appropriate.

Other panels of this court have likewise declined to recognize the necessity defense when the facts of the case do not support the defense. See *State v. Vandevelde*, No. 125,441, 2024 WL 4403116, at *12-14 (Kan. App. 2024) (unpublished opinion), *rev. denied* 320 Kan. 868 (2025); *Hunt*, 2012 WL 3966535, at *2-4; *Holick*, 2007 WL 518988, at *7; *State v. Mills*, No. 81,014, 1999 WL 35814781, at *3 (Kan. App. 1999) (unpublished opinion). We need not consider whether the jury instruction was legally appropriate because Kansas does not recognize the defense of necessity and the facts here do not warrant the jury instruction.

Because the jury instruction was not factually appropriate, the district court did not err in failing to sua sponte give a jury instruction on the defense of necessity—an instruction Cheeks did not request.

Affirmed.